IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–00079–PAB–KMT


NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

        Plaintiff/ Intervenor Defendant/Counter Defendant

v.

INTRAWEST ULC f/k/a INTRAWEST CORPORATION,
FEDERAL INSURANCE COMPANY,
NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, and
CONTINENTAL CASUALTY COMPANY,

        Defendants, and

INTRAWEST U.S. HOLDINGS, INC.,
INTRAWEST RESORTS, INC.,
UPPER BENCH DEVELOPMENT CORPORATION,
INTRAWEST CALIFORNIA HOLDINGS, INC.,
SIERRA STAR THREE DEVELOPMENT CORPORATION,
THE STRATTON CORPORATION, and
INTRAWEST STRATTON DEVELOPMENT CORPORATION,

        Intervenor Plaintiffs,

INTRAWEST ULC f/k/a INTRAWEST CORPORATION,

        Third-Party Plaintiff

v.

WILLIS NORTH AMERICA, INC. f/k/a WILLIS CORROON CORPORATION,
WILLIS OF NEW YORK, INC.,
WILLIS INSURANCE BROKERAGE OF UTAH, INC.,
WILLIS OF NEW JERSEY, INC.,
WILLIS CONSTRUCTION SERVICES CORPORATION OF NEW JERSEY f/k/a WILLIS
CORROON CONSTRUCTION SERVICES CORPORATION OF NEW JERSEY,
WILLIS CORROON CONSTRUCTION SERVICES CORPORATION OF CONNECTICUT,

WILLIS CORROON CONSTRUCTION SERVICES CORPORATION,
WILLIS OF NEW HAMPSHIRE, INC. f/k/a WILLIS CORROON CORPORATION OF NEW
HAMPSHIRE,
WILLIS OF MASSACHUSETTS, INC., and
JOHN DOE WILLIS ENTITY,

      Third-Party Defendants, and

FEDERAL INSURANCE COMPANY,
INTRAWEST ULC f/k/a INTRAWEST CORPORATION,

      Counter Claimant.

---

## ORDER

---

      This matter is before the court on the *in camera* review of documents submitted by Federal Insurance Company ("Federal").   [Doc. No. 472.]

      At a hearing on August 11, 2015 [Doc. No. 467], Federal was ordered to "file documents pertaining to the case evaluation reports and large loss notices for *in camera* review, restricted level 3 . . . ."   Plaintiff was allowed to file a response regarding the case law referenced by Federal during the hearing and relevant to the court's *in camera* review.   (*Id*. at 2; [Doc. No. 473], "National Union Fire Insurance Company of Pittsburgh, PA's Brief in Support of Its Second Motion to Compel Documents from Federal Insurance Company.")   This court has reviewed the Federal documents and has reviewed the case law submitted by the parties.

      Federal claims the documents submitted are reports prepared by claims adjusters or other Federal personnel that contain information about underlying lawsuits in this matter and which

2

were prepared for or in anticipation of litigation and therefore protected by the work product privilege.

The withheld documents have been described as case evaluation reports and large loss notices.   The reports are "running" data compilations, where entries were made on a periodic basis by the insurance adjuster.   Therefore, the court ordered production of only the last report in each withheld series; this report would reflect all additions to the report made periodically, however, might not fully reflect deletions.   This order is intended to apply with equal force to all the versions of the reports which have been withheld from discovery which would have been altered on a periodic basis.

Federal characterized the withheld case evaluation reports as "reports containing confidential communications from coverage counsel regarding opinions and recommendations on coverage, as represented on Federal's privilege log."   (Defendant Federal Insurance Company's Response in Opposition to Plaintiff's Second Motion to Compel [Doc. No. 448] at 8.)   Further, Federal claims, "Federal's 30(b)(6) witness, Mr. Charles Short, testified that **in addition to** basic information, these reports contain the examiner's summary of the facts and analyze coverages that apply." (*Id.*, emphasis in original.)   Federal described the withheld large loss notices or global large loss notices as documents containing communication from counsel and legal advice from counsel.   (*Id.*)   The documents reviewed by the court contained one global large loss notice and seven case evaluations.   To the extent any of the documents contained communications claimed subject to the attorney-client privilege, the court granted Federal's oral request that the documents be redacted to eliminate those entries prior to production to the court.   The documents received by

the court contained redactions which, by virtue of the surrounding context, were consistent with where attorney-client privileged communications would have shown in the documents.

### Legal Standard

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Colorado Mills, LLC v. Philadelphia Indem. Ins. Co.*, No. 12-CV-01830-CMA-MEH, 2013 WL 1340649, at *2-3 (D. Colo. Apr. 2, 2013) (citing *Frontier Refining Inc v. Gorman-Rupp Co., Inc.,* 136 F.3d 695, 702 n.10 (10th Cir. 1998)).   To be subject to the work product doctrine the materials must have been "prepared in anticipation of litigation.   It does not protect materials prepared in the 'ordinary course of business.'"   *Id.*, *Weitzman v. Blazing Pedals, Inc.,* 151 F.R.D. 125, 126 (D. Colo. 1993).   The work product doctrine applies "only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation."   *Bowne v. AmBASE Corp.,* 150 F.R.D. 465, 471 (S.D.N.Y. 1993).   The doctrine does not extend to facts known to a party or its counsel, even if learned in the context of litigation.   *Id.; Resident Advisory Bd. v. Rizzo*, 97 F.R.D. 749, 753 (E.D. Pa. 1983) (work product privilege does not protect severable factual material.)

To receive work product protection, the party resisting discovery must demonstrate that the information at issue "was prepared . . . in anticipation of litigation or for trial." *In re Grand Jury Proceedings,* 616 F.3d 1172, 1184–85 (10th Cir. 2010); *see also Pepsico, Inc. v. Baird, Kurtz & Dobson LLP,* 305 F.3d 813, 817 (8th Cir. 2002) (stating that "[i]n order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., *because of* the prospect of litigation") (emphasis added).

The court in *Martin v. Monfort, Inc.,* 150 F.R.D. 172 (D. Colo. 1993), set forth a process to be considered in determining a claim for work product protection:

> Rule 26(b)(3) . . . contemplates a sequential step approach to resolving work product issues. First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent. Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

*Id.* at 172–73 (internal citations omitted).

Materials covered by the work-product doctrine fall into two categories: fact work product, consisting of materials compiled by the attorney and agents of the attorney which do not contain the mental impressions, conclusions or opinions of the attorney; and opinion work product, consisting of the attorney's mental impressions, conclusions, opinions, or legal theories.   None of the documents reviewed by the court contain attorney's mental impressions and, therefore can fairly be considered fact work product, if they are covered by the privilege at all.

In this case, the documents at issue were prepared by insurance adjustors, not by or for an attorney.   They do, however, discuss and review claims that were, at the time, being litigated. *See Western Nat'l Bank of Denver v. Employers Ins. of Wausau,* 109 F.R.D. 55, 57 (D. Colo. 1985) (noting that materials created by attorneys acting in the capacity of investigator and adjustor for an insurance company are prepared in the ordinary course of business); *see also St. Paul Reinsurance*

5

*Co., Ltd. v. Commercial Fin. Corp.,* 197 F.R.D. 620, 636 (N.D. Iowa 2000) (in analyzing a work product question, the court concluded that "an insurer's investigation of whether *coverage* exists is required and the conduct of that much of its investigation is assuredly in the ordinary course of its business") (emphasis in original).   Generally fact sheets containing only basic factual information concerning the clients' respecting different actions in litigation but not revealing any mental impressions, conclusions, opinions, or legal theories are not privileged.   *See In re Grand Jury Investigation*, 557 F. Supp. 1053, 1056 (E.D. Pa. 1983).   Even after litigation has begun, documents may still fall outside work product protection if the primary purpose for preparing specific documents is "pure claims investigation."   *See Mission National Insurance Co. v. Lilly,* 112 F.R.D. 160, 163 (D. Minn. 1986).   Reports generated by the investigation of a claim do not become "work product" simply because the claim is potentially litigable. *Id.*

The doctrine may, under some conditions, protect documents prepared in an earlier litigation from discovery in a subsequent suit, particularly where the two cases are related.   *See F.T.C. v. Grolier Inc.,* 462 U.S. 19, 25 (1983).   However, there is no evidence to support an argument that Federal would have been anticipating litigation with National Union at the time these materials were created.   *See EDO Corp. v. Newark Ins. Co.*, 145 F.R.D. 18, 23-24 (D. Conn. 1992).   Federal was an excess insurance company with liability above both National Union and a company referred to as Reliance.   The insured was Intrawest.   National Union was paying its share of the claims at issue at the time, but in several of the documents it was noted that National Union was nearing its aggregate limit.

Ultimately, even if the documents withheld by Federal are considered to be fact work product, National Union may still be entitled to production upon a showing of: (a) a substantial need for the materials in this case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means.   The more crucial the information is to the requesting party, the more likely the documents will not be subject to the privilege.   *See Martensen v. Koch*, 301 F.R.D. 562, 581 (D. Colo. 2014).   *See also Diamond v. Stratton*, 95 F.R.D. 503, 506 (S.D. N.Y. 1982) (the statements sought to be discovered were held crucial to the resolution of the central issue raised by the plaintiff's claim of intentional or reckless action by the defendant); *In re Anthracite Coal Antitrust Litigation*, 81 F.R.D. 516, 523 (M.D. Pa. 1979) (the substance of items sought related to a crucial portion of the party's claim and a substantial need therefor was held to exist); *Firestone Tire & Rubber Co. v. Coleman*, 432 F. Supp. 1359, 1373 (N.D. Ohio 1976) (information held necessary to prosecution of plaintiff's claim).

### *Analysis*

The documents examined by the court are as follows:

Doc. No. 472-1       Global LLN Intrawest Corporation involving ten open claim reference numbers; First Ascent, Gateway, Solstice, Mammoth, Squaw Valley, Union Creek, N Long Trail, S Long Trail, Mt Trembland and Eagle Run prepared by David G. Favre.

Doc. No. 472-2       Case Evaluation Report, Eagle Run at Juniper Springs Owners Association, Inc. updated by Dee A. Nunley.

Doc. No. 472-3       Case Evaluation Report, Soltice Trailside at Stratton Association, Inc. (HOA) updated by Dee A. Nunley.

Doc. No. 472-4       Case Evaluation Report, Union Creek Townhomes association updated by Dee A. Nunley.

Doc. No. 472-5        Case Evaluation Report, Mount Tremblant HOA (phase I). updated by David G. Favre.

Doc. No. 472-6        Case Evaluation Report, (South) Long Trail House-Stratton Corporation updated by David G. Favre.

Doc. No. 472-7        Case Evaluation Report, (north) Long Trail Home Owners Association updated by Dee A. Nunley.

Doc. No. 472-8         Case Evaluation Report, MASTER/First Ascent updated by Dee A. Nunley.

Documents 472-2 through 472-8 consist of reports, each consisting of sections which are the same on each report.   Under some sections of each report typewritten entries appear.   In addition to information about the particular project to which the report pertained, there are sections of the reports which delineate items of interest to the litigation such as coverage, facts, jurisdiction analysis, liability assessment, contributing factors, damages, litigation analysis, litigating attorney information, settlement potential or ongoing negotiations and action plans.   Not all the evaluations contained pertinent information filled in under each section.   It appears to the court that all of the projects were the subject of lawsuits being actively litigated, or for which litigation was being contemplated unless resolved.   All reports concerned matters potentially covered by the Owner Controlled Insurance Program, described more fully *infra*.

> ### A.       *Global LLN [Doc. No. 472-1, ppgs. 1-5]*

The court finds that the Global LLN Report largely is a regurgitation of factual information about insurance policies with potential coverage on claimed losses and contact information as it generally pertains to the ten projects referenced.   The one exception appears on page 5 [Doc. No. 472-1] in the "Comments" area of the "Claim Reserve Potential" section of the report.   Included

with this section are six bulleted items.   Item No. 6 contains one redacted sentence allegedly

containing material which is attorney-client privileged.   No items under "Comments," with

exception of the redacted sentence, nor any other part of the Global LLN Report, contains any

attorney mental impressions, conclusions, opinions, or legal theories.

After *in camera* review, the court concludes that bullet items 3, 4, 5 and 6 contain

information which constitutes work product created during or in anticipation of litigation.

As to that information, then, production to other parties to this lawsuit would be denied

unless the Plaintiff has shown a "substantial need" for the discovery and an inability of obtaining

the substantial equivalent of the materials by other means.

At the heart of this controversy is an Owner Controlled Insurance Program ("OCIP")

which Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. issued to Defendant

Intrawest Corporation ("Intrawest").   National Union maintains that the OCIP provides a

$5,000,000 total, aggregate limit of coverage for all Intrawest construction projects covered by the

OCIP.   The remaining parties to the litigation maintain that the OCIP provided limits of

$5,000,000 coverage per project.   Federal Insurance provided excess insurance coverage to

Intrawest in the event the National Union OCIP policy limits became exhausted.[1]   Relevant to the

inquiry at the center of the case is what the excess insurance carrier(s) believed they were insuring;

in other words, their risk exposure at the time of the events transpiring.   For example, did Federal

understand that their obligation to provide insurance coverage would only begin when National

---

[1] A company called Reliance provided a layer of excess coverage between Federal and National Union, however this information is not relevant to this review.   In all examples in this order, the court will treat the Reliance layer of coverage as though it was non-existent.

9

Union had expended $5,000,000 or did it commence when National Union had expended $50,000,000 (10 projects x $5,000,000 per project) or when claims on any one project exceeded $5,000.000?   Other than the $5,000,000 aggregate advanced by National Union, was there any maximum coverage limit on the National Union OCIP or was that controlled only by the number of projects covered by the OCIP?

What Federal believed about the limitations of the National Union OCIP at the time the defects cases were ongoing is crucial information and can only be obtained from Federal itself. Bullet points 4 and 5 contain statements indicating what Federal believed to be its coverage commencement and what it would take to exhaust the National Union OCIP policy, at least at the time the Global LLN was prepared.   The court finds that Plaintiff has shown a substantial need for this information and that the information, contained in reports that were prepared and updated at the time the underlying lawsuits were being brought and National's Union's expenses were accruing, is both crucial and not available from any other source.   To the extent bullet points 4 and 5 contain work product information, I find that Plaintiff has made the requisite showing of need and therefore the information should be produced.

Therefore, as to the Global LLN [Doc. No. 472-1, ppgs. 1-5] and all its underlying previous versions, the documents shall be produced to Plaintiff, with the exception that on page 5, "Comments" section, the following may be redacted: 1) the attorney-client information redacted prior to the court's review; 2) bullet point 3; and 3) all remaining information in bullet point 6.

**B.**     ***Global LLN [Doc. No. 472-1, ppgs. 6-7]***

Attached to the Global LLN at pages 6 and 7 are two documents which appear to be copies of one email communication and one file note regarding a telephone call from "Chartsis": 1) email dated February 4, 2011 directed to David G. Favre apparently from (although the sender is unclear) Shamaila Hussain through ChubbMail re Intrawest – Construction Defects Claims 79732094 [Doc. No. 472-1 at 6]; and a File Note dated 12/14/2010, created by David Favre and copied to C. Short [Doc. No. 472-1 at 7].

The February 4, 2011 email contains only information about claims processing and is not covered by the work product privilege.   Even if certain litigation was pending at the time of the email, this appears to be a document which was part of the ordinary course of business of an insurance company and kept for that purpose.   The same is true about the December 14, 2010 File Note.   The note apparently documents a telephone call between Charles Coker and David Favre, representatives of two different insurance companies, wherein the two discussed issues relevant to claims handling and the process for transferring claim files from "Chartsis" to Federal.   Further there is an indication that Federal was advised of what National Union believed its remaining limit on the Intrawest policy to be.   This court finds that neither of these two documents is covered by the work product privilege.   However, to the extent that the December 14, 2010, note could be said to contain any work product information, for the reasons set forth with respect to the Global LLN pages 1-5, the court finds that Plaintiff has made the requisite showings of substantial need, the critical nature of the information and the lack of ability to get the information from other

11

sources.   Therefore, Federal shall produce to Plaintiff Doc. No. 472-1, pages 6-7, without redaction and together with all underlying versions or copies of the documents, if any.

### C.     Case Evaluation Reports [Doc. Nos. 472-2 – 472-8]

These evaluations are all documents that were prepared, apparently, as an update or running chronology concerning cases involving potential insurance liability of Federal in connection with litigation matters.   There is no indication that any attorney requested that the reports be kept or filed or that the reports were necessary to assist in the litigation effort.   None of the reports contain any attorney mental impressions, conclusions, opinions, or legal theories.   To the extent the reports might contain representations made by attorneys, those comments, if any, have been redacted by Federal as attorney-client privileged prior to submission to the this court. By necessity some of the sections simply contain factual information that would be helpful to the reviewer.   The factual sections include the Header information, Plaintiff Name(s), Coverage, Claimant, Claimant Attorney, Defense Attorney, and Co-Defendant Attorney.   The court finds that these sections of the reports containing factual information are not subject to work product privilege and should be produced to Plaintiff in this case.

To the extent Federal argues against the finding that the "Coverage" sections of the reports are purely factual, the court notes that the information filled in under this section of all the reports simply lists the various insurance policies and companies with might potentially cover losses, together with limits and positions within the group of policies.   It is in the ordinary course of an insurance company's business to ascertain and document the various other policies that could be liable for a claimed loss, and to determine its own position within the group.   This information is

not covered as work product.   However, to the extent it might be argued that the coverage information is privileged, for all the reasons set forth with respect to the Global LLN, this court finds that the Plaintiff has made substantial showings of substantial need for the coverage information, that such information as it was compiled by Defendant Federal is crucial to the most important aspect of the case and that National Union cannot obtain the information, as it was viewed by adjusters from the company at the time the events were occurring, in any other manner. Therefore, the coverage information contained in the Case Evaluations, must be produced to Plaintiff even if the work product protection otherwise applied, which this court specifically finds it did not.

The reports all, however, have sections that discuss potential liability of the insured in the lawsuit as well as settlement discussions and other strategy issues in connection with the particular lawsuit.   As to all these other sections of the Case Evaluation Reports, the court finds that the material is protected by the work product privilege and Plaintiff has not shown the requisite need for the information so as to justify overriding the privilege, with one exception.   In the Case Evaluation Report, MASTER/First Ascent updated by Dee A. Nunley [Doc. No. 472-8], the court finds that while the Summary of Facts section [Doc. No. 472-8 at 1] contains work product protected information, Plaintiff has, for all the reasons previously stated, shown substantial need for the information contained in this Section on this report only, that the information goes to a crucial issue in the case, and that the information is unavailable from any other source.   Therefore, in this one Case Evaluation Report, the information provided in the Summary of Facts section may not be redacted and shall be provided to Plaintiff in this and all previous versions of this report.

Therefore the Case Evaluation Reports [Doc. No. 472-2 – 472-8, and all preceding versions of the reports] must be produced to Plaintiff; however any information in sections other than the Header information, Plaintiff Name(s), Coverage, Claimant, Claimant Attorney, Defense Attorney, and Co-Defendant Attorney and, on Doc. No. 472-8 in addition, the Summary of Facts, shall be redacted.

Therefore it is **ORDERED**

National Union Fire Insurance Company of Pittsburgh, PA.'s Second Motion to Compel Documents from Federal Insurance Company [429] as it pertains to the Global Large Loss Notices and Case Evaluation Reports reviewed *in camera* is GRANTED IN PART AND DENIED IN PART as set forth herein.

Federal Insurance Company shall redact and prepare the documents ordered to be produced herein and file the documents with the court, under restriction Level 3, on or before September 4, 2015.   The court will review the documents to ensure compliance with the court's directions and, if compliance is met, shall thereafter reclassify the documents as restricted Level 1, authorizing access to the other parties in the case.

Dated this 27th day of August, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge