

August 31, 2015

Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154-0037
Attn:  David M. Satnick, Esq.

Re:   National Union Fire Insurance Company of Pittsburgh, PA v. Intrawest ULC, *et al.*, and Intrawest ULC v. Willis North America, Inc., *et al.*; United States District Court, District of Colorado –No. 1:13-cv-00079-PAB-KMT

Dear Mr. Satnick:

On behalf of Third-Party Defendants Willis North America Inc., Willis Construction Services Corporation of New Jersey (f/k/a Willis Corroon Construction Services Corporation of New Jersey), Willis of New York, Inc. (f/k/a Willis Corroon Construction Services Corporation of Connecticut), Willis of New Hampshire, Inc. (f/k/a Willis Corroon Corporation of New Hampshire), Willis of Massachusetts, Inc., and Willis of Michigan, Inc. (f/k/a Willis Insurance Brokerage of Utah, Inc.) (collectively, "Willis"), Loeb & Loeb LLP has engaged me to review the documentary and testimonial evidence in this case and to form opinions with regard to the following:

- Whether Willis fulfilled its responsibilities as insurance broker to Intrawest ULC ("Intrawest"), and met the standard of care applicable thereto, in connection with Willis's placement of the primary layer of Commercial General Liability coverage under the Owner Controlled Insurance Program (the "OCIP") issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union") to Intrawest; and

- Whether the Commercial General Liability policies written by National Union for each of the years included in the OCIP (the "Policies"),[1] provide Products Completed Operations ("PCO") coverage with a $5 million aggregate limit of liability for each of the Intrawest projects enrolled in the OCIP (*i.e.*, on a "per project" basis), or whether the aggregate limit for PCO claims is $5 million for all of the enrolled projects combined (*i.e.*, on a "per program" basis).

**EXHIBIT 1**

---

[1]  As defined in paragraph 25 of National Union's Complaint for Declaratory Judgment.

72 RIVER PARK, NEEDHAM, MA 02494-2631 • TEL: 781-449-2866 • FAX: 781-449-5340 • WWW.ALBERTRISK.COM

David M. Satnick, Esq.
August 31, 2015
Page 2 of 7

**Overview of the Facts and the Dispute**

On March 25, 1998, Intrawest appointed Willis Corroon Construction Services Corporation of Connecticut ("Willis CT") as Intrawest's "Broker of Record with respect to the marketing and negotiation of a rolling wrap-up insurance program … for Intrawest's U.S. construction activities." *See* INT003339 (Melick Depo. Exh. 24).[2] As alleged in National Union's Complaint for Declaratory Judgment (at ¶ 25), National Union ultimately issued five separate commercial general liability policies to Intrawest as part of the OCIP (covering the period from April 30, 1998 to June 30, 2002).

National Union commenced this action on January 14, 2013 seeking certain declaratory relief. *See generally* National Union's Complaint. National Union alleges that as a result of actual and alleged construction defects at various projects covered by the Intrawest OCIP, National Union has incurred, or has committed to incur, the payment of $5,000,000 in PCO claims. National Union asserts that the Commercial General Liability insurance it provided to Intrawest under the OCIP and the Policies provide an aggregate limit for PCO claims of $5,000,000 in total for all of the Intrawest projects enrolled in the program (*i.e.,* "per program"). Intrawest's Answer to National Union's Complaint disputes National Union's coverage position, and "affirmatively states [that] the OCIP provides $5,000,000 [in PCO] coverage per project." *See* Intrawest's Answer to Complaint for Declaratory Judgment at paragraphs 1 and 26.

By way of its Third-Party Complaint against Willis, Intrawest alleges that if the Court finds that the National Union Policies provide only $5,000,000 of PCO coverage for all of its projects enrolled in the OCIP (*i.e.*, that the $5 million aggregate applies on a "per program" basis), rather than a PCO aggregate of $5 million for each of the enrolled projects (*i.e.*, on a "per project" basis), then the Willis Entities will have breached their responsibilities to Intrawest and should be held responsible for any resultant damages sustained by Intrawest.

**Summary of Preliminary Expert Opinions**

Based upon my review of the Policies and the documentary and testimonial evidence provided to me thus far in this case, and my experience as an insurance advisor for the past forty-six (46) years, it is my preliminary expert opinion that:

- Willis (more specifically, Willis CT and Willis Utah) fulfilled their duties as brokers to Intrawest in connection with the insurance placed with National Union for Intrawest's OCIP. Indeed, in my expert opinion, Willis exceeded its obligations and the applicable duty of care by tenaciously pursuing and securing the broadest coverage for Intrawest, especially in respect of the PCO coverage, as evidenced by National Union's issuance of Endorsement #009 to the Policies which provides that the $5 million aggregate limit for

---

[2] In December 2000, Intrawest appointed Willis Insurance Brokerage of Utah, Inc. ("Willis Utah") as broker of record for the purpose of placing a June 30, 2000 to June 30, 2001 "run-off" or extension of coverages provided under the OCIP. *See* Willis Entities' Responses and Objections to Intrawest's Second Combined Discovery Requests at Response to Interrogatory 3; Willis Brokers' Responses and Objections to National Union Fire Insurance Company of Pittsburgh, PA.'s First Set of Interrogatories at Response No. 8.

**Albert Risk Management Consultants**

David M. Satnick, Esq.
August 31, 2015
Page 3 of 7

    PCO coverage under National Union's Commercial General Liability policies applies separately on a per project basis (coverage that had not even been requested by Intrawest).

- Endorsement #0009 to the National Union Policies (which National Union admits is part of each of the Commercial General Liability Policies under the OCIP) specifically and expressly provides for the "per project" aggregate PCO coverage that Willis sought and successfully secured for Intrawest. The language of Endorsement #009 is clear and unambiguous and admits of no other interpretation. It states, in relevant part: *"The products/completed operations limit is $5,000,000 each occurrence and $5,000,000 Aggregate for the extended completed operations period. It is also agreed and understood that the Products and Completed Operations Aggregate is not reinstated annually, however, it does apply separately on a per project basis."* (Emphasis added). The language "apply separately on a per project basis" is commonly understood by insurance industry professionals to mean that each individual enrolled project insured under the OCIP has its own $5,000,000 aggregate limit for claims occurring during extended reporting period (here, 10 years) applicable to each of the individual Intrawest projects enrolled in the OCIP.

**Points in Support of Opinion**

    <u>The Willis Entities Acted With Reasonable Care and Fulfilled Their Duties</u>

- As I have been informed by counsel, Colorado and Connecticut follow the general rule that insurance brokers have a duty to exercise reasonable skill and care in securing insurance on behalf of its client. *See, e.g.*, *Berlin Corp. v. Cont'l Cas. Co.*, 2010 Conn. Super. LEXIS 1479, at *8-10 (Conn. Super. Ct. June 2, 2010); *Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.*, 739 P.2d 239, 242-43 (Colo. 1987). In addition, "an insurance broker … who agrees to obtain a particular form of insurance coverage for the person seeking such insurance has a legal duty to obtain such coverage or to notify the person of his failure or inability to do so." *Bayly*, 739 P.2d at 243.

- Based upon my review of the documentary and testimonial evidence in this action, I found no evidence that Intrawest specifically requested (prior to coverage being bound or at any time thereafter) that Willis secure coverage having a $5 million PCO aggregate that applied separately "per project." *See*, *e.g.*, Rule 30(b)(6) Deposition of Intrawest, by Jane Zsigmond at 227:6 – 228:11; INT002573-75 (Greehey Depo. Exh. 22)/INT003737-39; INT002669 (Parrow Depo. Exh. 8); INT003776-79; INT003822-25 (Parrow Depo. Exh. 9); INT003360-61 (Parrow Depo. Exh. 18); Willis Brokers' Responses and Objections to National Union Fire Insurance Company of Pittsburgh, PA.'s First Set of Interrogatories at Response No. 11.[3]

---

[3] I have specifically reviewed the documents identified by Intrawest in its Responses to Third Party Defendants' Second Combined Discovery Requests (at Responses to Interrogatories Nos. 1, 12, and 14). None of those materials, however, include any request by Intrawest that Willis procure PCO coverage having an aggregate that applied separately "per project."

**Albert Risk Management Consultants**

David M. Satnick, Esq.
August 31, 2015
Page 4 of 7

- Based upon my review of documents and testimony related to this action, it was Willis CT's brokers (specifically Craig Parrow and William Bridgman) who requested and successfully secured PCO coverage having a $5 million aggregate for each of Intrawest's projects enrolled in the OCIP as part of Willis's efforts to secure the broadest coverage for its client, Intrawest.  *See*, *e.g.*, Parrow Depo. Exhs. 6, 10, 12, 13, 22, 23, 24, 25, 27, 28, 29, 34, 36, 41, 42, 43, 45, and 50; Bridgman Depo. Exhs. 1, 11, 21, 22 and 23.

- In my expert opinion, in negotiating and successfully securing PCO coverage having aggregate limits of $5 million for each of Intrawest's projects enrolled in the OCIP, Willis fulfilled its obligations to Intrawest to act with reasonable skill and care.  The Commercial General Liability insurance coverage that Willis secured from National Union for the Intrawest OCIP is, in my experience, one of the broadest liability policies I have seen for construction operations.  The coverage afforded to the insureds under the Intrawest Policies and endorsements thereto (both standard and manuscripted) is very broad, providing insurance protection well beyond that provided by the standard coverage forms.  Given that the duty of an insurance broker is to place the insurance coverage requested by its client, or to notify the client of its inability to do so, I believe that the scope the National Union Policies issued to Intrawest under the OCIP establishes that the Willis Entities not only met this basic duty to its client, Intrawest, but far exceeded those duties.

The Policies Provided for a Separate PCO Aggregate for each Project

- Endorsement #0009 to the National Union Policies (applicable to each of the OCIP Policies) specifically and expressly provides for a $5,000,000 PCO aggregate that applies separately "per project": "*The products/completed operations limit is $5,000,000 each occurrence and $5,000,000 Aggregate for the extended completed operations period.  It is also agreed and understood that the Products and Completed Operations Aggregate is not reinstated annually, however, it does apply separately on a per project basis.*"  *See, e.g.,* INT002952 (Endorsement #0009).

- The issuance of Endorsement # 0009 was not the product of mistake or oversight by National Union.  It was specifically requested by the Willis brokers and National Union's internal written communications confirm that the endorsement was intended to make clear that the $5 million PCO aggregate under the OCIP/Policies was to apply separately to each of Intrawest's enrolled projects.  *See* NU-CO-00072901 (Bridgman Depo. Exh. 22) (March 12, 1999 email from National Union's underwriter, Joe Riela, to Geoffrey Hall and Patricia Murphy of National Union stating: "To follow up yesterday's conversation, based on your response, the Completed Operations Agg does apply on a per project basis.  I will make this change on the endorsement.*").*[4]

---

[4]  A number of earlier correspondence from National Union concerning the application of the PCO aggregate are, at best, ambiguous given that these communications reference a single PCO aggregate for the applicable "extending reporting period."  Under the OCIP, each project had a separate extended reporting period.  Any ambiguity arising

**Albert Risk Management Consultants**

David M. Satnick, Esq.
August 31, 2015
Page 5 of 7

- That the PCO aggregate applies "separately" and on a "per project basis" is well understood in the insurance industry, as a matter of custom and practice, to mean that each individual project has its own aggregate limit of PCO coverage applicable to claims related to that specific project.

- Indeed, the Policies otherwise define and provide for an identical, yet separate "per project" application of the general liability aggregate (Insurance Services Office, Inc. ("ISO") form CG 25 03).  *See also* INT006711 (Endorsement to Policies defining "per project" application of general liability aggregate:  "Amendment – Aggregate Limits of Insurance (Per Project) … The General Aggregate Limit under LIMITS OF INSURANCE (SECTION III) applies separately to each of your projects ….").[5]

- National Union asserts that Endorsement #0009 to the Policies reflects the parties' purported intent that "the total limit of products completed operations coverage under the OCIP is $5 million" (which does not reinstate annually or apply separately for each Policy issued) and that "the $5 million products and completed operations limit may apply entirely to any one Intrawest project, or the $5 million limit may be used at multiple Intrawest projects on a first-presented basis until the $5 million limit is exhausted."  *See* Nation Union's Supplemental Answers to Intrawest ULC's First Interrogatories at Supplemental Response to Interrogatory No. 1.  In my expert opinion, National Union's proposed construction of Endorsement #0009 is contrary to its plain and unambiguous meaning, has no support as a matter of industry custom and practice, and would wrongly render the endorsement (and, specifically, that negotiated part which was intended to confirm that the $5million PCO aggregate applied "separately on a per project basis") meaningless and a nullity.  All aggregates apply on a "first presented basis," meaning the aggregate is eroded as and when the covered claims are paid.  Hence, there would have been no reason to have added the second paragraph to Endorsement #0009 if National Union's construction of the language therein were correct.

- Finally, and contrary to National Union's contention in this action, any documents separate and apart from the Policies and endorsements thereto (whether taking the form of a proposal, binder, indemnification agreement and/or paid loss addendum) do not, and cannot, modify, limit or alter the coverages provided under the Policies and endorsements.  Each of the Policies specifically provide: "This policy contains all the agreements between you and us concerning the insurance afforded. […] This policy's terms can be amended or waived <u>only</u> by endorsement issued by us and made part of this

---

from National Union's tying of the PCO aggregate to the extended reporting period was resolved, however, by National Union's issuance of Endorsement # 0009.

[5] *See generally*, Kowatch, Diane, *ISO revises the CGL – Affected Areas Include:  Pollution From Heating Equipment, Personal Injury & Contractors' Per Project Limits* (RoughNotes Feb. 1997) *available at* http://www.roughnotes.com/rnmagazine/1997/february97/02p20.htm> ("Aggregate Limits:  The current endorsement – Amendment – Aggregate Limits of Insurance (Per Project), CG 25 03, was designed and developed to make a separate aggregate limit available for each specific construction project that an insured contractor was involved in.").

**Albert Risk Management Consultants**

David M. Satnick, Esq.
August 31, 2015
Page 6 of 7

>policy." *See* INT006675 (emphasis added); *see also* Deposition of David Melick at 133:3-9.

**Reservation**

The opinions set forth herein are based upon the documentary and testimonial evidence made available to me as of the date of this report.  As discovery in the action is continuing, I reserve the right to add to or modify these opinions and/or the supporting analyses should additional documentation or information be provided to me (including, but not limited to, any reports of experts engaged by the other parties).  This report incorporates the additional information required by Federal Rule of Civil Procedure 26(a)(2)(B).  In preparing for trial, I may develop demonstrative exhibits based upon information included in this report, or additional information that becomes available hereafter.

**Basis for Opinion**

The documents, pleadings, deposition testimony and/or other information which I considered in forming my opinions are identified in the attached Schedule A.

My opinions were also based, in part, upon knowledge and information that I gained over the course of my fifty-two (52) year career in the insurance industry.

**Qualifications**

I am qualified to render an opinion in this case based upon my experience in the insurance industry as an insurance broker and a risk management and insurance consultant who has dealt with literally hundreds of insurance agents, brokers, and carriers, relevant insurance industry education and prior qualification as an expert in a number of insurance litigation cases.  From 1963 to mid-1969, I was employed as a licensed insurance broker engaged in the sale, marketing and servicing of commercial and personal insurance accounts.  From August 1969 to the present, I have been employed as a licensed insurance and risk management adviser providing counsel to clients in a wide range of commercial, governmental, and institutional fields regarding their risk management and insurance programs, adequacy of broker and insurer services, risk financing techniques and a variety of issues relating to corporate and personal risk management.

My experience dealing with actual situations in my role of assisting and supporting clients in the purchase of their insurance has provided practical expertise in the evaluation of proposals and policies, assessment of insurance terms and conditions, the practices of insurance agents and brokers, and insurance industry practices in general.

Attached is a copy of my Curriculum Vitae which includes a listing of articles I have authored in the previous 10 years and cases in which I have testified within the past four years.

**Albert Risk Management Consultants**

David M. Satnick, Esq.
August 31, 2015
Page 7 of 7

**Compensation**

As an employee of J. H. Albert International Insurance Advisors, Inc., I am not being directly compensated for my services in this matter.  J. H. Albert International Insurance Advisors, Inc. is invoicing Loeb & Loeb LLP for my time at the rate of $395 per hour and for out-of-pocket expenses.

If any other information is required at this time, please contact me.

Very truly yours,

*Michael A. Rodman*
Michael A. Rodman, CPCU

LOEB082615

**Albert Risk Management Consultants**