# EXHIBIT 1
# To Intrawest ULC's Motion to Exclude Certain Opinion Testimony of Edward J. McKinnon

# claims resource management, inc.

California License No. 2B35861
Nevada License No. 10860

P.O. Box 250

33345 Santiago Rd.
Acton, California 93510
Telephone: (661) 265-6400 Fax: (661) 265-6450
www.crmi.com
Edward J. McKinnon
President
Direct Line: (661) 265-6401
E-mail: ed@crmi.com

September 30, 2015

Mr. Matthew J. Fink
Nicolaides Fink Thorpe
Michaelides Sullivan LLP
71 S. Wacker Drive, Suite 4400
Chicago, IL 60606

> Re:    *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Intrawest ULC, et al.*,
>         Case No.: 1:13-cv-00079
>         Our File No.: 39157

Dear Mr. Fink:

I was asked to review certain material and prepare a report rebutting the August 30, 2015 report of James P. Schratz and other commentary by John Kezer regarding claims handling pursuant to Federal Rule of Civil Procedure 26(a)2(B). I was furnished and considered the documents listed on Appendix 1 to this report. I relied on the following materials to prepare this report:

1)    Documents, Numbered: INT006665 - INT006745 (correspondence and policy documents);

2)    Exhibits: 1, 10, 11, 15, 19 and 20 to J.F. Hodges Deposition;

3)    Jane Zsigmond Deposition, Dated July 30, 2015 and Exhibits: 21, 22, 23, 27 and 32 - 40;

4)    Exhibit: 2 to Jill Nikoden Deposition;

5)    Defendant Federal Insurance Company's Fed. R. Civ P. 26(A)(2) Expert Disclosures;

6)    Eagle Run Claim Documents (NU-CO 9787-10809; 14883-14997; 20047-20229; 20318-20501; 30037-36774; 37331-37362; 37849-38285; 38328-38539; 38750-41941; 61894-62747; 62990-65692; 68761-68859; 69203-69270; 69319-69322; 79701-80575);

7)    Long Trail Claim Documents (NU-CO 12009-13219; 13348-13432; 13527-13947; 14471-14882; 68701-68760);

**claims resource management of nevada, inc.**

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 2

8)    Mammoth Green Claim Documents (NU-CO 14998 - 20046; 20230-20317; 2050220795; 68879-68904; 62748-62989; 69189-69193; 68612-68648; 69201-69202);

9)    Solstice Claim Documents (NU-CO 10810-11713; 13220-13347; 13433-13526; 13948-14470; 20796-30036; 36775-37330; 37363-37848; 38286-38327; 6864968675; 68676-68700);

10)   Union Creek Claim Documents (NU-CO 11714-12008; 68860-68878);

11)   John Kezer's August 31, 2015 Report;

12)   Exhibits: 1-32 to Thomas Ferrell Deposition;

13)   Charles Coker Deposition, Dated August 31, 2015;

14)   Complaint in Intervention Against National Union Fire Insurance Company of Pittsburgh, PA;

15)   National Union Fire Insurance Company of Pittsburgh, PA's Second Supplemental Answers to Intrawest ULC 's First Interrogatories;

16)   Mammoth Green Claim Notes (NU-CO 68879 - 68904; 62748 - 62989; 69189 - 69193; 68612 - 68648; 69201 – 69202);

17)   Long Trail Claim Notes (NU-CO 68701-68760);

18)   James Schratz, August 30, 2015 Report;

19)   Sarah Wharton Deposition, Dated August 21, 2015;

20)   Christopher Weir Deposition, Dated November 11, 2014 and Exhibit 1;

21)   Linda Huot Deposition, Dated August 14, 2015;

22)   Kimberly Grabarz Deposition, Dated November 12, 2014;

23)   Lane Goos Deposition, Dated August 4, 2015.

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 3

## Opinions Regarding Industry Standards and Customs for Proper Claims Handling

After setting forth his background and experience, Mr. Schratz identifies and opines on what he describes as industry standards and customs for proper claims handling. I disagree with several of Mr. Schratz' statements as they are not entirely consistent with insurance industry custom and practice.

Mr. Schratz opines that "the standardization of insurance industry practices is also fostered by the use of standard forms such as ISO or ACCORD *(sic)* forms." I disagree with Mr. Schratz. First, ACORD does not produce forms that are included in insurance policies. Second, standard policy forms do not affect insurance industry practices. The standard in the insurance industry is to interpret policies as they are written and not to employ different practices based on the origins of policy forms.

Next, Mr. Schratz identifies eleven "practices or principles" which he opines "must" be followed. Mr. Schratz states that a failure to follow these principles constitutes a breach of proper claims handling procedure. I disagree. Such absolute statements ignore the reality that all claims are different and some of the standards Mr. Schratz lists simply do not apply to every claim. For example, if the insured's claim notice clearly shows that the insured is aware of "all benefits, coverages and time limits" that may apply, there is no necessity to disclose them again. While it is standard practice for an insurer to offer reasonable assistance to an insured that requires assistance, not all insureds require assistance and the reality is that some tasks can only be accomplished by the insured. As an example, in most situations an insurer would be unable to assist an insured in identifying its employees who were on site at the time of an accident.

Also, there are insurance policies, like the National Union Policies at issue in this case, which provide coverage subject to a self-insured retention ("SIR"). The practices applicable to handling of claims with an SIR are not the same practices used for claims without an SIR. Mr. Schratz fails to recognize this distinction. Under policies with an SIR, notice of a claim is often provided as a precaution, because the defense or indemnity of a claim could exhaust an applicable SIR. Information, facts and documents for these types of claims and/or defense to lawsuits involving claims subject to an SIR are typically provided by the self-insured, not the insurer whose policy is subject to an SIR.

Mr. Schratz opines that "the insurance company must conduct a full, fair, thorough and prompt investigation of the claim at its own expense." I disagree to the extent that Mr. Schratz is referring to every claim and every situation. In my opinion, the custom and practice in the insurance industry is to conduct a fair investigation that is appropriate under the facts and circumstances of the claim at issue. For example, if undisputed facts confirm that the accident at issue occurred five days before the prior insurer's policy expired, there is no need for the subsequent insurer to investigate liability or the extent of injury.

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 4

Mr. Schratz' report next discusses an "overview of third party claims handling by a liability insurer." Mr. Schratz opines that the procedures for handling third-party claims are the same regardless of the type of policy. I disagree. In my opinion, procedures for handling third-party liability claims are not universal. For example, the procedures that an insurer whose policy is subject to a SIR should follow frequently differ from those procedures that an insurer whose policy applies from dollar one should follow. Mr. Schratz refuses to recognize the fact that practices for handling claims with an SIR are different from practices for handling claims without an SIR.

Next, Mr. Schratz opines that California's insurance regulations require insurers to have claims manuals. While the regulations require written standards for handling claims, I am unaware of any requirement that these standards require a "claims manual."

Mr. Schratz opines on the time period for an insurer to advise an insured regarding coverage for a claim. Mr. Schratz opines that "[a]bsent highly unusual circumstances a delay of more than a few months in informing the insured if there is coverage is a violation of industry standards. A delay of a year or more falls far below the industry standard." I disagree that such a rigid standard applies to all claims and all policies. The time frame to obtain necessary facts and documentation is unique to each claim. The time period for an insurer to advise an insured regarding coverage for a claim varies based on the particular facts of that claim. Mr. Schratz ignores the reality that an insurer whose policy(ies) apply subject to a SIR has no obligation to defend or indemnify an insured until the SIR has been satisfied.

Mr. Schratz next discusses an insurer's "investigation of defense obligation." Mr. Schratz opines that "the claims handler should undertake [an] analysis [of the insurer's defense obligation] for each policy that its insured procured from the insurer." In my opinion, Mr. Schratz misstates insurance industry custom and practice. In many circumstances, claims are the result of injury or damage that occurs at a single moment in time. For such losses, it is appropriate for an insurer to limit its analysis of its defense obligation to the primary liability policy in force on the day that injury or damage occurred. In many instances, there is no need to review prior or subsequent policies or any excess policies in force on the date of the injury or damage when analyzing defense obligations.

Mr. Schratz also makes sweeping statements about establishing separate claims files and assignment of separate adjusters to those files. I disagree with Mr. Schratz. An insurer is not always required to create a separate claim file and assign a separate claims adjuster for each claim against each insured that may be covered under a particular policy. The specific facts of a claim determine whether separate claims files and/or separate adjusters are required.

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 5

Next Mr. Schratz opines that "[the coverage investigation cannot] be delegated to an outside counsel representing the carrier." Depending on what Mr. Schratz means by "delegated," Mr. Schratz' statement could be directly contrary to accepted insurance industry custom and practice. If Mr. Schratz is referring to an insurer appointing outside counsel to analyze legal issues and to make recommendations, I disagree. It is insurance industry custom and practice to retain independent counsel to make recommendations regarding unusual or unique coverage questions or in situations where an insured has expressed disagreement with a coverage decision. If Mr. Schratz is opining that an insurer cannot permit outside counsel to conduct any investigation necessary to make his or her coverage recommendations, I also disagree. A majority of investigative activity can be accomplished with simple telephone and email requests between an insured's counsel and coverage counsel.

Mr. Schratz opines on an insurer's "investigation of the insured's potential liability to the claimant." In this section, Mr. Schratz appears to criticize the utilization of the insured and "outside counsel" to assist in evaluating an insured's potential liability and an insurer's indemnity obligation. Mr. Schratz' report is not clear as to whether "outside counsel" refers to counsel for the insured or the insurer. As discussed above, to the extent a policy provides coverage subject to an SIR, an insurer has no obligation to investigate an insured's claim until the SIR is satisfied. I also disagree with Mr. Schratz' opinion that an insurer cannot seek information and documentation regarding a claim from the insured and/or outside counsel for the insured. An insurer does not "shift" its investigation to its insured by requesting claims information and documentation from the insured or counsel for the insured. To the contrary, the insured, in many instances, is the only source to obtain such facts and documentation.

In a section titled "factual background," Mr. Schratz discusses the coverage and claims at issue. Mr. Schratz' statements in the "factual background" section of his report are not entirely accurate. Mr. Schratz states that Intrawest developed real estate projects that are insured under the policy. Actually, Intrawest and enrolled contractors were insured under the OCIP against liability for bodily injury or property damage arising out of the construction of one or more projects. The National Union Policies issued as part of the OCIP are third-party liability policies, not first-party policies. First-party insurance policies provide coverage for damage to an insured's property. Third-party liability policies provide insurance coverage for an insured's liability to a third-party.

Consistent with the management of most OCIPs, Intrawest's insurance broker, Willis Corroon, was responsible for the record keeping, that is tracking which projects were included, tracking which subcontractors had enrolled (were insured) in respect of each project and collecting and tracking premium. With the passage of time, Willis lost or misplaced many of its records. National Union experienced difficulty locating its underwriting files.

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 6

Mr. Schratz states that National Union's response to claims relating to actual or potentially enrolled projects was inconsistent. Mr. Schratz inartfully states that National Union paid some of Intrawest's claims. To be accurate, National Union settled some of Intrawest's claims by paying to third parties sums where National Union concluded its insured(s) was/were legally obligated to pay damages because of third-party property damage. Mr. Schratz states that, as respects other claims, National Union asserted the OCIP was not intended to provide coverage for construction defect claims. I did not see such statements attributed to National Union. And, I note, Mr. Schratz cited no documents or deposition testimony in support of his contentions.

Rather than Mr. Schratz' position that National Union's responses to Intrawest's claims were inconsistent, I believe it is more accurate to say that National Union's responses to Intrawest's claims were influenced by whether Intrawest had already paid a particular claim before it was reported to National Union, the difficulty that National Union encountered confirming whether certain projects were enrolled under the National Union Policies and/or whether a particular contractor was enrolled under the National Union Policies, and by the unique differences as to the facts of each individual claim. Intrawest undertook repairs and/or paid to resolve a number of claims by homeowners' associations before Intrawest notified National Union of those claims. For the Union Creek claim, Intrawest incurred $759,784.54 for repairs prior to tendering its claim to National Union on August 31, 2006. *See* Deposition of J.F. Hodges at p. 95; INT 172481-172482. Intrawest incurred $1,281,201.23 for repairs related to the Eagle Run claim before that claim was tendered to National Union. *See* INT 172456-172457. Intrawest settled the Solstice homeowners' association's claim and undertook repairs before notifying National Union of that claim. *See* Deposition of J.F. Hodges at p. 95; INT258708; INT258710; INT258899; INT021868-21869; INT022035. Additionally, Intrawest incurred repair costs for the Long Trail claim before tendering the claim to National Union on January 23, 2007, and then paid to settle the homeowners' association's claims when repairs proved to have been inadequate.

In the factual background section of his report, Mr. Schratz mentions four projects: two in Vermont, Solstice and Long Trail; one in California, Eagle Run; and, one in Colorado, Union Creek. Mr. Schratz is critical of National Union's inability to communicate its coverage position as respects some claims and its "threat" to withdraw the defense of an Intrawest entity in the Eagle Run claim based on National Union's belief that the National Union Policies' Products Completed Operations Aggregate ("PCO Aggregate Limit") was approaching exhaustion. Mr. Schratz also appears to criticize National Union's refusal to pay more than the PCO Aggregate Limit to settle the Eagle Run claim. Mr. Schratz bases his criticisms on the conclusion that National Union's position on the PCO Aggregate Limit is wrong. Mr. Schratz offers no support for his opinion regarding whether National Union correctly interpreted the PCO Aggregate Limit.

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 7

### Opinions Regarding Mr. Schratz' and Mr. Kezer's Opinions

Mr. Schratz and Mr. Kezer opine that National Union failed to meet standards for proper claims handling and acted unreasonably in the handling of numerous Intrawest claims. Mr. Schratz attempts to support this claim by citing twelve "areas" where National Union's conduct fell below industry standards and was unreasonable. Mr. Schratz then offers his "Specific Findings and Discussions" which are largely redundant of the findings sets forth in the prior "General Discussion" section, with a few exceptions. I disagree with Mr. Schratz' and Mr. Kezer's opinion that National Union's handling of Intrawest's claims was unreasonable and outside of industry standards. I also disagree with each basis of their opinion. For efficiency, each basis and my analysis of same is set forth below.

1.          Mr. Schratz opines that National Union delayed unreasonably in investigating some of Intrawest' s claims with respect to liability and coverage. Mr. Kezer opines that National Union failed to investigate coverage for Intrawest's claims in a timely fashion. I disagree. Evidence shows that National Union promptly began its investigation of coverage and liability for four claims at issue:

- National Union received notice of the Union Creek claim on August 31, 2006 and claims materials confirm National Union's Union Creek claim file was opened and an investigation began on September 13, 2006. *See* NU-CO 11717, NU-CO 68878.

- National Union received notice of the Solstice claim on July 25, 2005 and claims materials confirm National Union's Solstice claim file was opened and an investigation was underway in the following months. *See* NU-CO 11694, NU-CO 68675.

- National Union received notice of the Long Trail claim on January 23, 2007 and claims materials confirm National Union's Long Trail claim file was opened and an investigation began on January 26, 2007. *See* NU-CO 69502-69503, NU-CO 68745-68746.

- National Union received notice of the Eagle Run claim on June 23, 2004 and claims materials confirm National Union's Eagle Run claim file was opened and an investigation began that same day. *See* NU-CO 10281-82, NU-CO 10808.

Most of what Mr. Schratz and Mr. Kezer categorize as "delays" are understandable in the context of each particular claim. Mr. Schratz and Mr. Kezer ignore the reality that the National Union Policies provided completed operations coverage subject to a significant SIR. Intrawest, not National Union, had the initial obligation to investigate the Solstice and Long Trail claims until the applicable SIR was satisfied. At the time Intrawest provided notice of the Union Creek and Eagle Run claims to National Union, Intrawest faced no third-party claim or liability in connection with these claims. As such, National Union had no obligation to investigate or defend these claims. National Union attempted to obtain information and documentation at the outset of its investigation of each claim. Intrawest and Willis did not provide necessary information and documentation to National Union. For example,

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 8

National Union made several attempts to obtain information and documentation regarding the specific repairs Intrawest was seeking in connection with the Solstice claim. *See* NU-CO 10966; NU-CO 10979; NU-CO 11020; NU-CO 10981.

2.    Mr. Schratz next opines that National Union did not separate coverage and "liability" files in accord with industry custom and practice. I disagree with this opinion. In my opinion, there was no need for National Union to create separate coverage and liability files for Intrawest's claims. National Union communicated with Intrawest to obtain information and documentation necessary to evaluate coverage and to assess liability. There was no litigation pending between Intrawest and National Union at that time. Thus, Intrawest's and National Union's interests were aligned with respect to claims against Intrawest. As such, National Union did not need to create separate liability and coverage files to handle Intrawest's claims.

3.    Mr. Schratz opines that National Union failed to keep Intrawest informed on the status of its claims. I disagree. First, claims materials evidence that National Union communicated the status of its investigation to Intrawest for the Solstice, Long Trail, Union Creek, and Eagle Run claims. Claims materials confirm that National Union communicated with Intrawest about the need for additional claim information and documentation to evaluate the Solstice, Long Trail, Union Creek, and Eagle Run claims. *See e.g.*, NU-CO 10966; NU-CO 10979; NU-CO 68666; NU-CO 68661; NU-CO 70044; NU-CO 70036; NU-CO 68869; NU-CO 68878; NU-CO 10278; NU-CO 68791. Second, Mr. Schratz ignores the reality that Intrawest was obligated to provide National Union with information and documentation National Union needed to support and evaluate Intrawest' s claims. Intrawest owed a duty to cooperate with National Union's investigation, including providing information and documentation that National Union reasonably sought. Third, as to the Union Creek, Solstice, Long Trail, and Eagle Run claims, Intrawest completed some or all repairs claimed by homeowners' associations before Intrawest reported these claims to National Union. *See* Deposition of Jane Zsigmond at p. 71-72; INT021005-06; NU-CO 10805; INT 172462-172473; NU-CO 11717; NU-CO 10819-10940; NU-CO 11694; INT02 1524-021528. As such, Intrawest did not tender a claim for third-party liability. Instead, Intrawest tendered a claim for reimbursement consistent with a first-party insurance policy. The National Union Policies do not provide first-party coverage.

4.    Mr. Schratz opines that National Union should not have handled the defense of more than one insured under a single claim file. I disagree with Mr. Schratz' assessment of National Union's handling of the claims. National Union was not handling the defense of Intrawest and another insured in connection with the Solstice, Long Trail, Union Creek, and Eagle Run claims. The Union Creek and Eagle Run claims involved only one insured: Intrawest. Therefore, there was no reason to create separate claims files. Intrawest settled the Solstice and Long Trail claims by homeowners' associations, extinguishing their third-party liability, before Intrawest brought its third-party liability claims against its general contractor, Engelberth Construction. In those claims, Intrawest and Engelberth were not defendants concurrently facing third-party liability under the National Union Policies. As such, there was no reason to open separate files for Intrawest and Engelberth.

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 9

5.      Mr. Schratz next opines that National Union "failed to properly document the claim file."
National Union maintained separate files for the Solstice, Long Trail, Union Creek, and Eagle Run claims.
I am not certain as to which file or to what information Mr. Schratz is referring. I saw no significant
documentation missing from National Union's Solstice, Long Trail, Union Creek, and Eagle Run claims
files. As such, I disagree with Mr. Schratz' opinion.

6.      Next, Mr. Schratz opines that National Union attempted to shift its "non-delegable" duty to
investigate claims to Intrawest. Again, I disagree. Mr. Schratz ignores the reality that Intrawest
purchased insurance policies that provide coverage subject to an SIR. As such, Intrawest was
obligated to undertake the initial investigation and defense to these claims. Further, I disagree that
National Union's requests for additional information and documentation can fairly be characterized
as an improper attempt to "shift" National Union's claims investigation onto Intrawest. Mr. Schratz
correctly notes that Intrawest had an obligation to assist in National Union's investigation of claims.
Industry custom and practice permit an insurer to request information and documentation from an
insured as part of a claim investigation, particularly where the insured is the sole custodian of the
information, such as information and documentation supporting its decision to settlement a claim.
*See e.g.* NU-CO 10966; NU-CO 10979; NU-CO 11020; NU-CO 10981. Claims materials confirm
that National Union contacted Intrawest's risk manager, Linda Huot, for additional claims
information. *See e.g.*, NU-CO 70036; NU-CO 68735; NU-CO 68870; NU-CO 68869; NU-CO 68868;
NU-CO 68865; NU-CO 68867; NU-CO 68790; NU-CO 40604; NU-CO 10757; NU-CO 68662; NU-
CO 68660; NU-CO 68659. Mr. Schratz incorrectly states that National Union did not attempt to
contact other Intrawest personnel and third parties for information and documentation. National
Union claims adjuster Sarah Wharton contacted a number of Willis personnel located in offices
located across the United States in an effort to obtain additional project enrollment information. *See
e.g.*, NU-CO 11716-17; NU-CO 11716; NU-CO 68877-78; NU-CO 68873-74. Claim materials also
show that National Union contacted personnel for another insured, Engelberth Construction, to obtain
project enrollment information. *See e.g.*, NU-CO 68752; NU-CO 68755; NU-CO 68744; NU-CO
68743. Moreover, claims materials confirm that National Union contacted other Intrawest personnel
to obtain information and documentation necessary to investigate Intrawest's claims. *See e.g.*, NU-
CO 10966; NU-CO 10979; NU-CO 68878. Additionally, there were no deposition transcripts, expert
reports, or other materials for National Union to review for claims against Intrawest related to the
Union Creek, Solstice, Long Trail, and Eagle Run claims, because Intrawest settled those claims
before those materials could be generated in litigation.

\

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 10

7.      Mr. Schratz opines that National Union's inability to locate its underwriting files was the result of inadequate policies and procedures. I disagree with Mr. Schratz. I am advised that National Union was only temporarily unable to locate its underwriting files. It has located and produced those files in this litigation. National Union was not required to recreate its underwriting files. Further, even if National Union's underwriting files were misplaced, I see nothing to indicate that a misplaced underwriting file was the result of inadequate policies or procedures. Mr. Schratz' incorrectly states that National Union failed to reach out to third parties to investigate claims. Mr. Schratz apparently missed evidence that to investigate Intrawest' s claims, National Union traced Willis' underwriting files across the country before determining that Willis had misplaced its own underwriting files. *See e.g.*, NU-CO 68874. Mr. Schratz also overlooks the fact that National Union contacted Intrawest for information and documentation to confirm coverage for claims. *See e.g.*, NU-CO 70036; NU-CO 68735; NU-CO 68870; NU-CO 68869; NU-CO 68868; NU-CO 68865; NU-CO 68867; NU-CO 68790; NU-CO 40604; NU-CO 10757; NU-CO 68662; NU-CO 68660; NU-CO 68659. Additionally, Mr. Schratz states that National Union failed to contact "internal underwriters about possible coverage for Intrawest." Claims materials confirm National Union's claims adjusters contacted personnel in National Union's underwriting department to obtain information and documentation regarding coverage for Intrawest' s claims. *See e.g.*, NU-CO 68860-78. Last, claims materials confirm that National Union did, in fact, contact other insureds in an effort to obtain claim information and documentation that National Union was unable to obtain from Intrawest and Willis. *See e.g.*, NU-CO 68752; NU-CO 68755; NU-CO 68744; NU-CO 68743.

        Further, Mr. Schratz opines that National Union failed to conduct an investigation into Intrawest' s potential liability to third parties during the time National Union investigated coverage. I disagree. Intrawest completed some or all repairs for the Union Creek, Eagle Run, Long Trail, and Solstice claims before tendering those claims to National Union. As such, National Union did not have an opportunity to investigate Intrawest's liability to the homeowners' associations.

8.      Mr. Schratz next opines that National Union's "unreasonable" claims handling is part of a pattern and practice. Mr. Schratz offers no information to support this opinion. I do not believe that any claims professional can determine a pattern and practice by reviewing one or even several claims files. Further, the claims and situations presented here are, in many respects, rare and unique.

9.      Mr. Schratz opines that National Union's assertion of the defense of voluntary payments is contrary to the industry standard as to how that provision is commonly interpreted. I disagree with Mr. Schratz' conclusion but agree that "the term 'voluntary payments' is used to mean those instances where for example the insured settles a claims *(sic)* before notifying the carrier and then seeks reimbursement from the carrier." Claims materials confirm that Intrawest tendered the Solstice, Union Creek, and Eagle Run claims after Intrawest made payments to repair construction defects. *See e.g.*, NU-CO 68878; NU-CO 68781-82; NU-CO 70037; NU-CO 68670. Claims materials also confirm that Intrawest undertook repairs before tendering the Long Trail claim to National Union and, after the homeowners' association determined those repairs were insufficient, Intrawest paid $ 7.5 million to settle the Long Trail claim within a short time after Intrawest notified National Union of that claim, but

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 11

before National Union could investigate that claim. NU-CO 70044; NU-CO 68753-55. In my opinion, Mr. Schratz' cannot rule out possible success of a voluntary payments defense, but whether a voluntary payments defense ultimately could succeed is a question of fact that will be decided by the trier of fact, not an expert.

Further, and contrary to Mr. Schratz' opinion, National Union did communicate with Intrawest and Willis regarding claims. *See e.g.*, NU-CO 70036; NU-CO 68735; NU-CO 68870; NU-CO 68869; NU-CO 68868; NU-CO 68865; NU-CO 68867; NU-CO 68790; NU-CO 40604; NU-CO 10757; NU-CO 68662; NU-CO 68660; NU-CO 68659; NU-CO 68874; NU-CO 10828. Mr. Schratz' opinion that National Union "had an opportunity to defend or investigate Intrawest's claim and receive the insured's cooperation but instead did nothing" is contrary to the evidence in this case.

10. Mr. Schratz opines that National Union did not conduct a full investigation before asserting its position that the PCO Aggregate Limit is $5M for all projects. I disagree with this conclusion and the premise that National Union's efforts to determine how the PCO Aggregate Limit applies should have been documented in the claim files. Claims materials confirm that National Union claims adjusters did perform an investigation into the underwriting of the National Union Policies in order to evaluate coverage for Intrawest's claims. This includes an assessment of the PCO Aggregate Limits. Further, there was no reason for each National Union adjuster to analyze the PCO Aggregate Limit until the National Union policies were nearing exhaustion. Prior to that time, there was no dispute regarding the PCO Aggregate Limit.

11. Mr. Schratz and Mr. Kezer criticize National Union for not paying benefits under the National Union Policies to Intrawest. I disagree with Mr. Schratz' and Mr. Kezer's criticism. The National Union Policies are not first-party policies that provide reimbursement to an insured for damage to the insured's property. The National Union Policies are liability policies which provide payments to a third party on behalf of an insured, not amounts paid by an insured to settle a claim. National Union performed a reasonable investigation of Intrawest's claims in light of the unique facts of each claim and National Union paid 100% of what it understands the PCO Aggregate Limits to be.

12. Mr. Schratz criticizes National Union for failing to conduct an adequate investigation into whether Intrawest satisfied the National Union Policies SIR for the projects at issue. Mr. Schratz fails to recognize that the industry standard imposes this obligation on the insured, not the insurer, because it is the insured that must establish an SIR is satisfied. In many instances, the simplest and sometimes the only way for an insurer to evaluate satisfaction of an SIR is to request information and documentation from the insured.

13. Mr. Schratz is critical of the fact that by not paying Intrawest' s Solstice claim, National Union "forced" Intrawest to file suit against the Solstice project's general contractor, Engelberth Construction. I disagree with Mr. Schratz' opinion as it is against the weight of evidence in this case. Claims materials confirm that Intrawest sued Engelberth on June 24, 2005 [NU-CO 11075-78 and provided National Union with notice of that claim, at the earliest, on July 25, 2005 [INT7031]. There is no evidence to

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 12

support Mr. Schratz' opinion that Intrawest was forced to pursue claims against Engelberth. On the contrary, evidence clearly shows that Intrawest settled the Solstice claim and filed suit against Engelberth without consulting National Union.

**Opinions Regarding Mr. Schratz' Conclusion**

Mr. Schratz concludes his opinions and states that National Union failed to meet industry standards for proper claims handling and acted unreasonably in a number of areas. Mr. Schratz speaks generally about National Union's handling of claims. I understand that there are more than forty claims by Intrawest for coverage under the National Union policies. However, Mr. Schratz only focuses on four claims where Intrawest was the main source of claim information and documentation. Intrawest apparently has no complaints about National Union's handling of the remainder of its claims. To the extent Mr. Schratz sets forth the facts on which he relies to reach his conclusions, I have responded above. To the extent he is referring to the timing of claims activities, I do note some areas where National Union could have responded sooner. The claims files I reviewed do reflect some delays in responses to notice of claims and instances where National Union adjusters failed to respond to specific, isolated inquiries. In some files, investigations were not as proactive as I would like to see. The reality is, however, that the Solstice, Long Trail, Union Creek, and Eagle Run claims were very complex claims presenting a number of unique issues that required further analysis by National Union. I have seen no evidence that any insured was harmed by National Union's review of claims.

**Conclusion**

These opinions are based on my forty-plus years in the insurance industry and my careful review of the documents listed above. I reserve the right to supplement these opinions based on additional information obtained through future activity in this litigation.

Attached as Appendix 2 is a copy of my Curriculum Vitae, which sets forth my background and expertise.

An article of mine was published in a 1994 edition of <u>For The Defense,</u> the magazine of the DRI. The article dealt with "claim files." In July 2006, I published an article for Daubert Online, which is a newsletter of the DRI. That article dealt with claims experts. I was published twice in <u>Declarations,</u> the magazine of the Excess/Surplus Lines Claim Association. The 2005 article dealt with my, then, 37-year perspective of the insurance industry. The 2008 article dealt with "minimum limit policies and catastrophic injuries."

For this assignment I am billing my time for all activity related to this matter at $300 per hour, plus out-of-pocket expenses.

**claims resource management, inc.**

Mr. Matthew J. Fink
September 30, 2015
Our File: 39157
Page 13

Attached as Appendix 3 is a list of cases in which I have testified in the last four years.

Very truly yours,

CLAIMS RESOURCE MANAGEMENT, INC.

Edward J. McKinnon, RPA
President

**Appendix 1**

1. National Union Fire Insurance Company of Pittsburgh, PA.'s Complaint for Declaratory Judgment;
2. Intrawest ULC 's Answer to National Union Fire Insurance Company of Pittsburgh, PA.'s Complaint for Declaratory Judgment;
3. Intervenors' Complaint in Intervention;
4. National Union Fire Insurance Company of Pittsburgh, PA.'s First Amended Answer and Affirmative Defenses to Intervenors' Complaint in Intervention;
5. Federal Insurance Company's Fed. R. Civ P. 26(A)(2) Expert Disclosures;
6. Intrawest ULC's Fed. R. Civ P. 26(A)(2) Expert Disclosures;
7. National Union Fire Insurance Company of Pittsburgh, PA.'s Fed. R. Civ P. 26(A)(2) Expert Disclosures;
8. James Schratz' August 30, 2015 Report;
9. John Kezer's August 31, 2015 Report;
10. CNA's Responses to Plaintiff's First Set of Interrogatories;
11. CNA's responses to Plaintiff's First Set of Requests for Production;
12. CNA's responses to National Union's Second Set of Requests for Production;
13. CNA's responses to National Union's Second Set of Interrogatories;
14. Federal's Response to National Union's First Set of Interrogatories and Requests for Production;
15. Federal's Response to National Union's Second Set of Interrogatories;
16. Federal's Response to National Union's Second Set of Requests for Production;
17. Federal's Supplemental Response to National Union's Second Set of Requests for Production;
18. Federal's Supplemental Response to National Union's Second Set of Interrogatories;
19. Federal's Second Supplemental Response to National Union's Second Set of Requests for Production;
20. Intervenors' Response to National Union's First Set of Interrogatories;
21. Intervenors' Response to National Union's First Set of Requests for Production;
22. Intrawest ULC's Response to National Union's First Set of Requests for Production;
23. Intrawest ULC's Response to National Union's First Set of Interrogatories;
24. Intrawest ULC's Response to National Union's Second Set of Requests for Production;
25. Intrawest ULC's Response to National Union's First Second of Interrogatories;
26. Intrawest ULC's Response to Willis' First Set of Document Requests;
27. Intrawest ULC's Response to National Union's First Set of Requests to Admit;
28. National Union Fire Insurance Company of Pittsburgh, PA.'s Response to Intrawest ULC's First Requests for Production;
29. National Union Fire Insurance Company of Pittsburgh, PA.'s Response to Intrawest ULC's First Set of Interrogatories;
30. National Union Fire Insurance Company of Pittsburgh, PA.'s Response to Intrawest ULC's First Requests for Admission;
31. National Union Fire Insurance Company of Pittsburgh, PA.'s Response to CNA's First Requests for Production;
32. National Union Fire Insurance Company of Pittsburgh, PA.'s Response to CNA's First Set of Interrogatories;
33. National Union Fire Insurance Company of Pittsburgh, PA.'s Supplemental; Response to Intrawest ULC's Second Set of Requests for Production of Documents.
34. Willis Entities' Response to National Union Fire Insurance Company of Pittsburgh, PA.'s

First Set of Interrogatories;

35. Willis Entities' Response to National Union Fire Insurance Company of Pittsburgh, PA.'s First Set of Requests for Production;

36. Wrongly joined Willis Responses to National Union Fire Insurance Company of Pittsburgh, PA.'s First Interrogatories;

37. Wrongly joined Willis Entities' Response to National Union Fire Insurance Company of Pittsburgh, PA.'s First Requests for Production;

38. Willis Entities' Supplemental Response to National Union Fire Insurance Company of Pittsburgh, PA.'s Request for Production of Documents;

39. Willis Entities' Response to Intrawest ULC's First Discovery Requests;

40. Willis Entities' Responses to National Union Fire Insurance Company of Pittsburgh, PA.'s Requests to Admit;

41. Willis Entities' Responses to National Union Fire Insurance Company of Pittsburgh, PA.'s Second Set of Interrogatories;

42. Charles Coker Deposition, Dated August 13, 2015;

43. Jill Nikoden Deposition; Dated January 8, 2015;

44. Sarah Wharton Deposition, Dated August 21, 2015;

45. Christopher Weir Deposition, Dated November 11, 2014 and September 10, 2015;

46. Linda Huot Deposition, Dated August 14, 2015;

47. Lane Goos Deposition, Dated August 4, 2015;

48. Jane Zsigmond deposition, Dated July 30, 2015;

49. J.F. Hodges deposition, Dated July 28, 2015;

50. David Farve Deposition, Dated December 9, 2014 and April 16, 2015;

51. Thomas Accocella Deposition, Dated April 9, 2015

52. William Bridgman Deposition, Dated June 9, 2015;

53. Thomas Correl Deposition, Dated July 21, 2015;

54. Mark Dugle Deposition, Dated May 27, 2015;

55. Thomas Ferrell Deposition, Dated April 21, 2015;

56. Tonya Gallegos Deposition, Dated April 3, 2015;

57. Kim Grabarz Deposition, Dated November 12, 2014;

58. James Greehey Deposition, Dated June 9, 2015;

59. Thomas Lanning Deposition, Dated April 2, 2015;

60. David Melick Deposition, Dated October 29, 2014;

61. William Murphy Deposition, Dated July 7, 2015;

62. Deeann Nunley Deposition, Dated May 20, 2015;

63. Craig Parrow Deposition, Dated June 4, 2015 and August 5, 2015;

64. Louis Rivera Deposition, Dated July 8, 2015;

65. Juli Saylor Deposition, Dated May 29, 2015;

66. Brian Schofield Deposition, Dated August 19, 2015;

67. Charles Short Deposition, Dated April 28, 2015;

68. NU-CO  9787-10809;  14883-14997;  20047-20229;  20318-20501;  30037-36774;  37331-37362;  37849-38285;  38328-38539;  38750-41941;  61894-62747;  62990-65692; 68761-68859; 69203-69270; 69319-69322; 79701-80575

69. NU-CO 12009-13219; 13348-13432; 13527-13947; 14471-14882; 68701-68760;

70. NU-CO 14998 - 20046; 20230-20317; 20502-20795;68879 - 68904; 62748-62989; 69189 - 69193; 68612 - 68648; 69201-69202;

71. NU-CO 11714-12008; 68860-68878;

72.     NU-CO 10810-11713; 13220-13347; 13433-13526; 13948-14470; 20796-30036; 36775-37330; 37363-37848; 38286-38327; 68649-68675; 68676-68700;

73.     INT006665 - INT006745;

74.     NU-CO 68761-68859; 69203-69270; 69319-69322;

75.     NU-CO 68701-68760;

76.     NU-CO 68879-68904; 62748-62989; 69189-69193; 68612-68648; 69201-69202;

77.     NU-CO 68649-68675; 68676-68700;

78.     NU-CO 68860-68878;

79.     NU-CO 10735-10737;

80.     NU-CO 10738-10743;

81.     NU-CO 10750-10756; and,

82.     REL000001-003220.

# CURRICULUM VITAE

## EDWARD J. MCKINNON



<u>EDUCATION</u>

**University of Maryland and Merrit College, Oakland, California,**
1966 - 1967

<u>MILITARY SERVICE</u>

**U.S. Army Intelligence Corps,** 1966-1969.  Including service in Vietnam, 1968.

<u>PROFESSIONAL EXPERIENCE</u>

**GAB (General Adjustment Bureau),** 1969-1973

Multi-line claims adjuster, handling all types of claims from auto and homeowners to large commercial property and casualty losses.

**Harbor Insurance Co.,**  1973-1988

Adjuster, 1973-1974
Assistant Branch Manager, 1974-1977
Home Office Property Claims Manager, 1977-1978
Assistant Vice President, 1978-1980
Vice President and General Claims Manager, 1980-1987
Senior Vice President, 1988
Member, Board of Directors, 1988

**Claims Resource Management, Inc./ACCLAIM Administrators**  1988-Present

President and founder

<u>PROFESSIONAL AFFILIATIONS</u>

**Excess/Surplus Lines Claims Association**

President, 1986
Member, Board of Directors, 1984-1987

**claims resource management, inc.**
P.O. Box 250  •  33345 Santiago Road  •  Acton, California 93510
Telephone: (661) 265-6400  •  Fax: (661) 265-6450  •  www.crmi.com

January 2015

OTHER PROFESSIONAL AFFILIATIONS (CONTINUED)

**Federation of Defense and Corporate Counsel**

Committee on Alternate Fee Arrangements, 1993
Litigation Management College Faculty, 1994-1996
Vice Chairman - Excess/Surplus Lines Section, 1996-1998
Litigation Management College Advisory Council, 1997-1998
Chairman - Excess/Surplus Lines Section, 1998-2000
Vice Chair - Technology and E-Commerce Committee, 1999-2003
Chair - Technology and E-Commerce Committee, 2003 - 2006

OTHER PROFESSIONAL ACTIVITIES

**Insurance Institute of America**
Instructor, 1979.

**Fox & Co., Certified Public Accountants, Los Angeles.**
Speaker on **Business Interruption Claims Evaluation**, June 1980.

**Law Offices of Buchalter, Nemer, Fields & Younger, Los Angeles.**
Speaker on **Insurance Company Operations**, August 1988.

**Excess/Surplus Lines Claims Association, Marco Island, Florida.**
Panelist, **Panel on Current Reinsurance Issues**, September 1988.

**Law Offices of Sheft & Sweeny, New York.**
Conducted Seminar on **Current Trends in Directors & Officers Claims**, March, 1989.

**Property Claims Forum of Sacramento, California**.
Panelist, **Contamination Seminar,** May 1989.

**Property Loss Research Bureau, San Diego, California.**
Panelist, **Contamination Workshop**, March 1990.

**Excess/Surplus Lines Claims Association, Sandestin, Florida.**
Panelist, **Panel on Alternatives to Lawyers for Claim Work,** October 1990.

**FICC Claim College**
Faculty, 1995-1996.

**Mealey Publications, Inc., Conference, Laguna Niguel, California.**
Speaker on **Recent Trends in Directors and Officers Insurance**, February 1997.

**Home Builders Association, Seminar, San Luis Obispo, California.**
Panelist, **Responding to the Mold Menace**, May 2002.

**claims resource management, inc.**
P.O. Box 250 • 33345 Santiago Road • Acton, California 93510
Telephone: (661) 265-6400 • Fax: (661) 265-6450 • www.crmi.com

January 2015

OTHER PROFESSIONAL ACTIVITIES CONTINUED

**Pismo Coast Association of Realtors, Seminar, San Luis Obispo, California.**
Panelist, **Responding to the Mold Menace**, July 2002.

**Atascadero Association of Realtors, Seminar, Atascadero, California.**
Panelist, **Responding to the Mold Menace**, November 2002.

**San Joaquin Environmental, Inc., Seminar, Fresno, California.**
Panelist, on **Mold and Insurance**, August 2003.

**Joint International Conference, Barcelona, Spain.**
Speaker on **International Product Safety**, May 2004.

**American Bar Association, Insurance Coverage Litigation Committee, CLE Seminar, Tucson,
Arizona.**
Speaker on **Insurance Expert Witnesses**, March 2005.

**Association of Southern California Defense Counsel, 46th Annual Seminar, Los Angeles, California**
Panelist, **Handling Professional Liability Claims,** February 2007.

**Association of Southern California Defense Counsel, 52nd Annual Seminar, Los Angeles, California**
Speaker on **How Come My Case Never Gets to Trial?**, February 2013.

**Casualty Loss Reserve Seminar, San Diego, California**
Panelist, **Current Issues in Construction Defects**, September 2014.

OTHER

**Licensed Insurance Adjuster in:**

| | |
|---|---|
| **Alaska, license number 33891** | **North Carolina, license number 394822** |
| **Arizona, license number 1039675** | **Oklahoma, license number 100178719** |
| **California, license number 2772917** | **Oregon, license number 745003** |
| **Connecticut, license number 995443** | **South Carolina, license number 369563** |
| **Florida, license number E078596** | **Texas, license number 1232983** |
| **Idaho, license number 311435** | **Utah, license number 206857** |
| **Nevada, license number 84179** | **Washington, license number 116436** |
| **New Mexico, license number 157821** | |

**Registered Professional Adjuster, register number 170**

**ARIAS U.S. Certified Arbitrator**

claims resource management, inc.
P.O. Box 250 • 33345 Santiago Road • Acton, California 93510
Telephone: (661) 265-6400 • Fax: (661) 265-6450 • www.crmi.com

January 2015

## EXPERT TESTIMONY
### (Past Four Years – 8/25/10 – 9/23/15)

09/23/15

| Reference | CAPTION | Venue | Docket | Deposition | Trial |
|---|---|---|---|---|---|
| 28456 | Progressive West Insurance Company vs. Craig Tiscareno and Teresa Tiscareno | USDC Southern District of California | 08 CV 0180 W CAB | 08/25/10 | 10/04/11 |
| 31590 | Everest National Insurance Company vs. Redland Insurance Company | Superior Court of New Jersey, Law Division: Somerset County | SOM-L-1820-08 | 09/21/10 | 02/23/12 |
| 31817 | Columbia Casualty Company vs. National Union Fire Insurance Company of Pittsgurgh, PA, et al | Superior Court of California, County of Los Angeles | BC 402657 | 12/10/10 | 10/26/11 |
| 33324 | Leonel Arellano vs. Progressive West Insurance Co, et al. | Superior Court of California, County of Orange | 30-2009-00309533-CU-BT-CJC | 02/16/15 | |
| 33435 | Clarendon National Insurance Company vs. Empire Enterprises, et al | Superior Court of the State of California, County of Orange | 30-2010 0334233 | 11/15/11 | |
| 34047 | Probuilders Specialty Insurance Company RRG vs. Valley Corp B fka R.J. Haas Corp et al | USDC Northern District of California | CV10-5533-EJD | | 01/07/14 |
| 34047 | Probuilders Specialty Insurance Company RRG vs. Valley Corp B fka R.J. Haas Corp et al | USDC Northern District of California | CV10-5533-EJD | | 01/08/14 |
| 34384 | Ron Carlson and Marion Benjamin Carlson vs. Century Surety Company | USDC Northern District of California | C11-00356SI | 01/16/12 | |
| 34468 | Craig Milhouse and Pamela Milhouse vs. Travelers Commercial Insurance Company | USDC Central District of California | SA-cv-01730-CJC | 03/20/12 | 08/19/13 |
| 34539 | California State Automobile Association Inter-Insurance Bureau vs. Progressive Casualty Insurance Company | USDC Northern District of California | C 11-1747 MEJ | 01/20/12 | |
| 34551 | Mary Asta vs. Alamo Rent-A-Car, et al | Superior Court of the State of California, County of Los Angeles | BC 182 039 | 01/09/12 | |
| 34585 | Robert Paul Bohn, et al vs. Allied Word Assurrance Company (U.S.), Inc. | USDC Middle District of Florida, Tampa Division | 8:10-cv-1927-T-23TBM | 03/26/12 | |
| 34673 | Santa Fe Braun, Inc., formerly know ans C.F. Braun & Co. vs. Insurance Company of North America, et al | Superior Court of the State of California, City and County of San Francisco | CGC-04-428686 | 10/18/12 | |
| 35072 | NCR vs. Gulf Reinsurance | Arbitration in California | | 05/17/12 | 07/23/12 |
| 35321 | Pamela Carpenter vs. Allstate Insurance Company | USDC Central District of California | LACV 11-7662-GW (JCGX) | | 09/14/12 |
| 35876 | American Alternative Insurance Corporation vs. Hudson Specialty Insurance Company | USDC Central District of California | EDCV12-622 JGB | 09/05/13 | |
| 35923 | Columbia Casualty Company et al vs. 3M Company, et al | State of Minnesota, County of Ramsey, District Court | 62-C2-07-2419 | 02/26/13 | |
| 36240 | Okland Construction Company, Inc vs The Phoenix Insurance Company, et al | USDC District of Colorado | 11-CV-02652 | 06/24/13 | |
| 36294 | Tobias Friedman, et al vs. Farmers Insurance Exchange; et al | Superior Court of the State of California, County of San Diego | 37-2012-00096570-CU-IC-CTL | 05/13/13 | |
| 36439 | Muon Thach and Montha Thach vs. Mid-Century Insurance Company, eta l. | Superior Court of the State of California, County of Stanislaus | 670652 | 05/30/14 | 12/18/14 |
| 36577 | Sutton Leasing, Inc. vs. United Financial Casualty Company, et al | USDC Central District of California | CV-12-4615 | 10/16/13 | |
| 36673 | United States Fidelity & Guaranty Company, et al. v. American Reinsurance Company, et al. | Supreme Court of the State of New York, County of New York | 604517 / 2002 | 07/10/14 | |
| 36862 | Truck Insurance Exchange et al vs. Calaveras Asbestos Ltd. | Superior Court of the State of California, County of Los Angeles | BC446277 | 11/05/13 | 11/20/13 |
| 36862 | Truck Insurance Exchange et al vs. Calaveras Asbestos Ltd. | Superior Court of the State of California, County of Los Angeles | BC446277 | 11/19/13 | |
| 36910 | BCBSMA vs BCS Insurance Company | Arbitration in Illinois | | 01/30/14 | 03/20/14 |

Page 1

**EXPERT TESTIMONY**
**(Past Four Years – 8/25/10 – 9/23/15)**

09/23/15

| Reference | CAPTION | Venue | Docket | Deposition | Trial |
|-----------|---------|-------|--------|------------|-------|
| 36911 | Turnberry Towers, LP adv. Lexington | State of Nevada, County of Clark | A-12-668035-C | 07/17/15 | |
| 36955 | Al and Tamara Thompson vs. Fire Insurance Exchange | Superior Court of the State of California, County of Fresno | 12 CE CG 01045 JH | 01/09/14 | 01/21/14 |
| 37020 | Truck Insurance Exchange vs. Kaiser Cement & Gypsum Corporation | Superior Court, State of California, County of Los Angeles-Central District | BC249550 | 02/20/15 | 04/01/15 |
| 37441 | O.P.H. Of Las Vegas, Inc. vs. Oregon Mutual Insurance Company, Dave Sandin and Sandin & Co. | District Court, Clark County, Nevada | A-12-672158-C | 03/11/15 | |
| 37490 | Mary Kenick, Assignee, Individually and as parent of Angelina Trailov, a minor vs. Allstate Insurance Company and Kathy Berry | Superior Court of Alaska, Fourth Judicial District at Bethel | 4BE-04-00103 CI | 05/05/15 | 09/18/15 |
| 37681 | Utica Mutual vs. Clearwater | USDC Northern District of New York | 6:13-CV-1178 (GLS/TWD) | 01/13/15 | |
| 38088 | McMillin Management vs. American Home Assurance Co., et al. | Superior Court of California, County of San Diego | 37-2012-00104980-CU-IC-CTL | 01/15/15 | 02/09/15 |
| 38291 | Centex Homes vs. Lexington Insurance Co. | USDC Northern District of Texas, Dallas Div. | 3:13-CV-0719-BN | 01/08/15 | |
| 38951 | Taylor Morrison of California, LLC as successor in interest to Morrison Homes, Inc. vs. First Specialty Insurance Corporation | Superior Court of California, County of Orange, Central Justice Center | 30-2013-00672484-CU-IC-CJC | 08/05/15 | |
| 38981 | State National Insurance Company vs. Cal-Regent Insurance Services Corporation | Arbitration | N/A | 08/06/15 | |