# EXHIBIT 2
# To Intrawest ULC's Motion to Exclude Certain Opinion Testimony of Edward J. McKinnon

EDWARD MCKINNON, RPA  
NATIONAL UNION VS. INTRAWEST UCL

October 27, 2015  
1–4

```
                                                Page 1
 1              UNITED STATES DISTRICT COURT
 2                  DISTRICT OF COLORADO
 3
 4   NATIONAL UNION FIRE INSURANCE
     COMPANY OF PITTSBURGH, PA,
 5                                    No. 1:13-CV-00079
     Plaintiff and Intervenor Defendant,      PAB-KMT
 6
     vs.
 7
     INTRAWEST UCL f/k/a INTRAWEST
 8   CORPORATION, FEDERAL INSURANCE
     COMPANY, NATIONAL FIRE INSURANCE
 9   COMPANY OF HARTFORD, and CONTINENTAL
     CASUALTY COMPANY,
10
     Defendants
11
     and
12
     INTRAWEST U.S. HOLDINGS, INC.,
13   INTRAWEST RESORTS, INC., UPPER BENCH
     DEVELOPMENT CORPORATION, INTRAWEST
14   CALIFORNIA HOLDINGS, INC., SIERRA STAR
     THREE DEVELOPMENT CORPORATION, THE
15   STRATTON CORPORATION, AND INTRAWEST
     STRATTON DEVELOPMENT CORPORATION,
16
     Intervenor Plaintiffs
17   _____
18
19       VIDEOTAPED DEPOSITION OF EDWARD J. McKINNON, RPA
20                    OCTOBER 27, 2015
21                      9:12 a.m.
22            633 West Fifth Street, 52nd Floor
                    Los Angeles, California
23
24            Diana Janniere, CSR-10034
25
```

```
                                                Page 2
 1              APPEARANCES OF COUNSEL
 2
 3   For the Plaintiff and Intervenor Defendant:
 4       PATTON & RYAN, LLC
         PAUL D. MOTZ, ESQ.
 5       330 NORTH WABASH AVENUE, SUITE 3800
         CHICAGO, ILLINOIS  60611
 6       312.261.5171
         pmotz@pattonryan.com
 7
         NICOLAIDES, FINK, THORPE, MICHAELIDES, SULLIVAN
 8       IAN A. COOPER, ESQ.
         71 SOUTH WACKER, SUITE 4400
 9       CHICAGO, ILLINOIS  60606
         312.585.1413
10       icooper@nicolaidesllp.com
11
12   For the Defendant Intrawest ULC:
13       SHERMAN & HOWARD, LLC
         KELLIE NELSON FETTER, ESQ.
14       633 SEVENTEENTH STREET, SUITE 3000
         DENVER, COLORADO  80202-3622
15       303.299.8448
         kfetter@shermanhoward.com
16
17
     For the Defendant Federal Insurance:
18
         GODFREY JOHNSON
19       ANNE ZELLNER NOLTE, ESQ.
         9557 SOUTH KINGSTON COURT
20       ENGLEWOOD, COLORADO  80112
         303.228.0700
21       nolte@gojolaw.com
22
23
24
25
```

```
                                                Page 3
 1              APPEARANCES OF COUNSEL
 2
 3   For the Defendant Willis North America:
 4       LOEB & LOEB
         LINDSAY FEUER, ESQ.
 5       (TELEPHONICALLY PRESENT)
         345 PARK AVENUE
 6       NEW YORK, NEW YORK  10154
         212.407.4000
 7       lfeuer@loeb.com
 8
 9   For the Defendant Continental Casualty Company:
10       COLLIAU & CARLUECIO
         DON MCCORMICK, ESQ.
11       (TELEPHONICALLY PRESENT)
         555 MISSION STREET, SUITE 330
12       SAN FRANCISCO, CALIFORNIA  95104
         415.932.7582
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                Page 4
 1              INDEX OF EXAMINATION
 2   WITNESS:  EDWARD J. McKINNON, RPA
 3   EXAMINATION                                    PAGE
 4   By Ms. Fetter                                     7
 5   By Ms. Nolte                                    237
 6   By Mr. Motz                                     238
 7
 8              INDEX OF EXHIBITS
 9   EXHIBIT        DESCRIPTION                    PAGE
10     1    9/30/15 LETTER TO MR. FINK FROM
            MR. MCKINNON; REPORT                     21
11
       2    10/23/15 LETTER TO MR. FINK FROM
12          MR. MCKINNON; SUPPLEMENTAL REPORT        21
13     3    8/30/15 REPORT MR. SCHRATZ               59
14     4    COMMON POLICY DECLARATION               112
15     5    ACTIVITY NOTES 5/15/13                  168
16     6    ACTIVITY NOTES 10/23/12                 174
17     7    EXPERT TESTIMONY PAST FOUR YEARS        211
18     8    ACTIVITY NOTES 3/4/14                   240
19
20      (Original Exhibits 1 - 8 are attached to the
21   original transcript.)
22
23
24
25
```



Case No. 1:13-cv-00079-PAB-KMT   Document 589-2   filed 11/24/15   USDC Colorado
pg 3 of 8

EDWARD MCKINNON, RPA
NATIONAL UNION VS. INTRAWEST UCL

October 27, 2015
37–40

Page 37

1 "Union Creek," do you understand what I am talking
2 about?
3    A   I believe that's the name that was generally
4 used.
5    Q   And then for California, you mentioned Mammoth
6 Green. If I refer to the other California claim as
7 "Eagle Run," is that fair for the purposes of this
8 deposition?
9    A   Yes.
10   Q   And for the purposes of this deposition, will
11 it make sense to you if I refer to Long Trail, Solstice,
12 Union Creek, and Eagle Run collectively as Intrawest's
13 intervention claims?
14   A   I -- you can use any label. I don't
15 understand that label, but if that is what you would
16 like to use, I can -- I can follow you.
17   Q   Or would it be simpler if I used them as
18 Intrawest's counterclaims or claims handling claims?
19   A   Those are the claims that are at issue, I
20 understand.
21   Q   So if I use the term "Intrawest claims
22 handling claims," does that make sense?
23       MR. MOTZ: Kellie, what if -- what if it does
24 not make sense to me?
25

Page 38

1 BY MS. FETTER:
2    Q   Well, earlier you indicated that we had a
3 claim in this lawsuit related -- related to the products
4 completed operations aggregate. I am trying to set that
5 aside, so -- to make sure that we are not talking about
6 that claim.
7       Does that make sense?
8    A   That was not a claim that I was asked to
9 consider. I was aware that it was at issue.
10   Q   How about if I call them "the reimbursement
11 claims"?
12   A   That's fine.
13   Q   If National Union had discovery responses
14 related to Long Trail, Solstice, Union Creek, and Eagle
15 Run, do you believe that those would be important for
16 you to review?
17       MR. MOTZ: I am going to object to the form
18 of the question and the foundation of the question.
19       THE WITNESS: I was reviewing material
20 necessary to respond to Mr. Schratz's report. If he
21 had made reference to them, then I would have looked at
22 them.
23 BY MS. FETTER:
24   Q   You reviewed a large number of documents that
25 were not specifically referenced in Mr. Schratz's

Page 39

1 report; right?
2    A   I didn't do a comparison. I didn't see any
3 that he looked at that -- I -- I didn't have an
4 understanding of what they were.
5    Q   My question is a little bit different.
6       If National Union has discovery responses
7 related to Long Trail, Solstice, Union Creek, and Eagle
8 Run, would those be important for you to consider in
9 preparing your report?
10       MR. MOTZ: I am going to object to the form
11 of the question and the foundation.
12       THE WITNESS: As they were not something
13 specifically referenced by Mr. Schratz, no, I don't
14 believe so.
15 BY MS. FETTER:
16   Q   Did you ask National Union's counsel for any
17 discovery responses related to those four projects?
18       MR. MOTZ: I am going to object to the form
19 of the question.
20       THE WITNESS: I don't have any recollection
21 of doing so.
22 BY MS. FETTER:
23   Q   Okay. If Intrawest provided discovery
24 responses related to those four projects, would they be
25 important for you to review?

Page 40

1       MR. MOTZ: Same objection and to foundation.
2       THE WITNESS: I was looking at the claims
3 handling in realtime as the claims handling was
4 occurring, not what some lawyer years later -- the way
5 some lawyer years later is characterizing what
6 happened.
7 BY MS. FETTER:
8    Q   So is the answer to my question, no, it
9 wouldn't be important to review Intrawest's discovery
10 responses related to those four projects?
11       MR. MOTZ: I am going to put on the objection
12 to the form of the question. Argumentative and vague.
13       THE WITNESS: I don't believe it was relevant
14 to the task that I was given.
15 BY MS. FETTER:
16   Q   If you will look again at lines 68 through
17 7- -- well, through 81 on Appendix 1 to your report.
18      On those lines, you have -- each line has
19 either a group of Bates numbers or a single Bates range
20 on the line.
21      Is there any significance to the Bates numbers
22 that are on any particular line in your Appendix 1?
23   A   This was actually prepared by my assistant.
24 So I am not sure how the number of the documents came to
25 be identified the way they are.



Case No. 1:13-cv-00079-PAB-KMT    Document 589-2    filed 11/24/15    USDC Colorado
pg 4 of 8

EDWARD MCKINNON, RPA  
NATIONAL UNION VS. INTRAWEST UCL

October 27, 2015  
145–148

Page 145

1 BY MS. FETTER:
2    Q   Would you expect there to be an explanation of
3 why it committed the balance of their aggregate in the
4 claims file?
5        MR. MOTZ:  Same objection.
6        THE WITNESS:  If -- if my memory is serving
7 me right, it was a very minimal amount of money that
8 was left in the aggregate.  So compared to that claim,
9 I -- I don't think it would -- I don't think it
10 required a great deal of analysis.
11 BY MS. FETTER:
12    Q   Because of the small amount National Union
13 claimed was left at issue?
14    A   Right, compared to the claim with which it was
15 dealing, the magnitude of that claim.
16    Q   Okay.  Did National Union conclude that
17 Intrawest was legally obligated to -- strike that.
18        Did National Union reach a conclusion one way
19 or another as to whether Intrawest was legally obligated
20 to pay damage because of third-party property damage in
21 the Solstice claim?
22        MR. MOTZ:  Objection to form.
23        THE WITNESS:  I believe the Solstice
24 claim had been -- the money had been paid before
25 National Union actually got notice of the claim.  So it

Page 146

1 never got to that issue.
2 BY MS. FETTER:
3    Q   Did National Union ever tell Intrawest you
4 paid this claim before you provided us notice, so there
5 is no coverage?
6        MR. MOTZ:  Sorry, can I have that question
7 back, please?
8        (Record read.)
9        THE WITNESS:  I saw no such statement on
10 file.
11 BY MS. FETTER:
12    Q   If National Union knew from its first -- from
13 Intrawest's first tender that Intrawest had already paid
14 money on the -- on the Solstice claim; right?
15        MR. MOTZ:  Objection to the form of the
16 question.
17        THE WITNESS:  I believe they knew that that
18 is what Intrawest was saying, yes.
19 BY MS. FETTER:
20    Q   If that fact was determinate of coverage,
21 would National Union need any other information from
22 Intrawest to provide it a coverage position?
23        MR. MOTZ:  I am going to object to the form
24 of the question.
25        THE WITNESS:  You are asking me to assume

Page 147

1 that that is determinate of coverage?
2 BY MS. FETTER:
3    Q   Well, is that fact determinate of coverage?
4    A   I don't believe by itself it is.
5    Q   Okay.  So if -- if -- what else would National
6 Union need to know?
7    A   Whether there was prejudice, the extent of
8 that prejudice; whether there were any of its rights had
9 been lost because of that.
10   Q   Did you see any evidence that National Union
11 was prejudiced by Intrawest's settlement of the Solstice
12 claim?
13       MR. MOTZ:  Objection to the form of the
14 question.
15       THE WITNESS:  Yes, it was put in a position
16 where at least there was some prejudice because it had
17 to defend other contractors in the -- in that
18 litigation brought by Intrawest to try to recover the
19 money it had paid.
20 BY MS. FETTER:
21   Q   Did you see any evidence that Intrawest would
22 have been able to settle with the HOA for less, a
23 smaller amount if it had notified National Union earlier
24 of the claim?
25       MR. MOTZ:  Objection to the form of the

Page 148

1 question.
2       THE WITNESS:  I didn't see anything one way
3 or the other.
4 BY MS. FETTER:
5   Q   Did you see any evidence that National Union
6 would have saved defense costs if Intrawest had
7 submitted the claim prior to settling with the HOA?
8       MR. MOTZ:  I am going to object to the form
9 of the question.  And incomplete hypothetical.
10      THE WITNESS:  With the exception that it was
11 put in the position of having to defend some of the
12 subcontractors, I don't know whether that would have
13 been necessary, had the claim been handled
14 appropriately by Intrawest; had they recognized their
15 self-insured retention obligations and reported timely
16 to National Union.
17      We could speculate about what might have
18 happened if they had done the right things, but I don't
19 know for sure what would have happened.
20 BY MS. FETTER:
21   Q   But did you -- did you see anything that
22 indicates there was prejudice?
23   A   Just what we talked about.
24   Q   Do you have any information -- or did you see
25 any information in the file indicating that Intrawest

Case No. 1:13-cv-00079-PAB-KMT   Document 589-2   filed 11/24/15   USDC Colorado
pg 5 of 8

EDWARD MCKINNON, RPA
NATIONAL UNION VS. INTRAWEST UCL

October 27, 2015
165–168

Page 165

1  settlement" means.
2  BY MS. FETTER:
3     Q   Do you have an understanding as to the
4  insured's obligations regarding a settlement that occurs
5  prior to a formal lawsuit under Colorado law?
6     A   An insured's obligation to -- I don't -- I
7  don't understand your question.  I'm sorry.
8          THE REPORTER:  Was there an objection there?
9          MR. MOTZ:  There was a form objection.
10         THE REPORTER:  Okay.
11 BY MS. FETTER:
12    Q   What does an insurance company have to do
13 under Colorado law if an insured settles a claim before
14 a formal lawsuit has been filed?
15         MR. MOTZ:  Objection to the form of the
16 question, and to the extent it calls for a legal
17 conclusion.
18         THE WITNESS:  I think it is going to be very
19 fact-specific, too, as to what the situation was, what
20 the coverage is; what the coverage isn't.  It is going
21 to be fact-specific.
22 BY MS. FETTER:
23    Q   Does the mere fact that the settlement
24 happened before a lawsuit was filed in and of itself
25 defeat coverage?

Page 166

1          MR. MOTZ:  Same objections.
2          THE WITNESS:  My assumption would be it would
3  not by itself.
4  BY MS. FETTER:
5     Q   Okay.  Does the insured -- would it -- strike
6  that.
7          Would it be prudent for an insured to wait
8  until there is a formal lawsuit to begin investigating
9  liability?
10         MR. MOTZ:  Objection to the form of the
11 question.
12         THE WITNESS:  That is going to vary from
13 situation to situation.  Very fact-specific.
14 BY MS. FETTER:
15    Q   Do you have an opinion on what the products
16 completed operation aggregate limit is under the
17 Intrawest OCIP?
18    A   I have not been asked to look at that
19 question.
20    Q   Okay.  Do you --
21         MR. MOTZ:  Did you get my objection?
22         THE REPORTER:  No.
23         MR. MOTZ:  I said scope.
24         THE REPORTER:  You got to talk louder, I
25 didn't hear it.

Page 167

1          MS. FETTER:  That is not feedback Paul gets
2  often.
3     Q   Do you anticipate offering any opinion at
4  trial regarding the products completed operation
5  aggregate limit?
6     A   The only -- the only reason it is all
7  relevant, it is one of the factors that National Union
8  was considering when it proceeded with the claims that
9  we are talking about.
10         I don't know what the right answer is and I
11 have not been asked to look at that.
12    Q   Okay.
13         MR. MOTZ:  The videographer is passing notes,
14 Kellie.  The teacher is going to come in here and not
15 be happy.
16         MS. FETTER:  Well, let's go ahead and take a
17 break, since the videographer is passing notes.
18         THE VIDEOGRAPHER:  We are off the record.
19 This marks the end of Disk 3 at 2:44 p.m.
20         (Recess.)
21         THE VIDEOGRAPHER:  Going back on the record.
22 This marks the beginning of Disk 4.  The time is
23 3:00 p.m.
24 BY MS. FETTER:
25    Q   On page 7 of your report, you state, "Evidence

Page 168

1  shows that National Union promptly began its
2  investigation of coverage and liability for four claims
3  at issue."
4          Do you see that?
5     A   Yes.
6     Q   What did National Union do to begin its
7  investigation of coverage on the Union Creek claim?
8     A   I believe it started asking questions.
9     Q   Can you provide me with any more detail than
10 that?
11    A   I would have to go back and look.  I have not
12 committed it all to memory.
13    Q   What would you need to look at to --
14    A   The claim file for Union Creek.  I guess we
15 could look at these Bates numbers here.  I had forgot I
16 had done that.
17    Q   Exhibit No. 5 is Bates numbers starting with
18 NUCO 68860.
19         MR. MOTZ:  You can put it down.  Thank you.
20         MS. FETTER:  And it goes through NUCO 68878.
21         (Exhibit 5 marked.)
22 BY MS. FETTER:
23    Q   And would you agree with me that these are
24 Activity Notes for the Union Creek claim?
25    A   Yes.



Case No. 1:13-cv-00079-PAB-KMT   Document 589-2   filed 11/24/15   USDC Colorado
pg 6 of 8

EDWARD MCKINNON, RPA
NATIONAL UNION VS. INTRAWEST UCL
October 27, 2015
189–192

Page 189

1  A  Not necessary, no.  Or I should say not always
2  necessary.
3  Q  On page 10 of your report under paragraph 9,
4  you state, "Intrawest paid 7-and-a-half million to
5  settle a Long Trail claim within a short time after
6  Intrawest notified National Union of that claim, but
7  before National Union could investigate that claim."
8  Do you see that?
9  A  I do.
10  Q  It is approximately five months between when
11  Intrawest provided notice and when it settled that
12  claim.
13  A  I don't recall as I sit here, but I will
14  accept that, if that is your representation.
15  Q  Is it your opinion that Intrawest should have
16  waited longer than that five months in order to reach a
17  settlement?
18  MR. MOTZ:  I am going to object to the form
19  of the question.  Assumes facts.  Misstates evidence
20  and foundation.
21  THE WITNESS:  I don't think it is the timing.
22  It is the amount of the settlement, which is far in
23  excessive of its self-insured potential.
24  BY MS. FETTER:
25  Q  But it did notify National Union of the -- of

Page 190

1  the claim; right?
2  A  It provided notice, yes.
3  Q  And National Union knew -- when it provided
4  notice, it informed National Union that it -- it
5  couldn't be over Intrawest's self-insured retention?
6  A  I believe that's true.
7  Q  And approximately five months later, Intrawest
8  began settlement discussions or reached a settlement
9  nego -- agreement with the plaintiff in that case; is
10  that your understanding?
11  A  I am accepting your five-month period, that
12  is -- that is my understanding.
13  Q  Okay.  And I will be honest, it could be plus
14  or minus a few weeks there.  I am not 100 percent
15  certain on those dates, but assuming it is about that
16  time frame.
17  Do you believe that Intrawest should have held
18  up that settlement to wait for National Union's coverage
19  position?
20  MR. MOTZ:  I am going to object to the form
21  of question.
22  THE WITNESS:  No, I think it should have
23  advised National Union what it was doing before it did
24  it.
25

Page 191

1  BY MS. FETTER:
2  Q  Did you see any evidence that Intrawest failed
3  to advise National Union?
4  A  That it was entering into -- or considering to
5  pay 7-and-a-half million dollars?
6  Q  Yes.
7  A  I did not see that.
8  Q  Did you see any evidence that National Union
9  was prejudiced by Intrawest's settlement of that claim?
10  A  The facts of the settlement, the timing of the
11  settlement creates possibility of prejudice.  I didn't
12  investigate whether it be prejudice within the -- at --
13  at a level that would be a factor in coverage.
14  Q  How long does National Union have to have to
15  investigate a claim before Intrawest can -- strike that.
16  MR. MOTZ:  I saw where you were going there.
17  MS. FETTER:  I am glad you did because I
18  didn't.  That is why I stopped.
19  MR. MOTZ:  There was going to be a question
20  that was going to have a small, little objection to it.
21  BY MS. FETTER:
22  Q  Does an insured with a self-insured retention
23  have an obligation to wait for the insurer to make a
24  coverage determination before it settles a claim with
25  the plaintiff?

Page 192

1  MR. MOTZ:  Form.  Calls for a legal
2  conclusion.
3  THE WITNESS:  I think it is going to depend
4  on the facts of the particular situation.
5  BY MS. FETTER:
6  Q  Well, in the facts of the Long Trail claim,
7  did Intrawest have an obligation to -- let's just say in
8  the facts of the Long Trail claim?
9  A  I -- I did not see any indication that it was
10  waiting on a coverage determination from National Union.
11  Q  Did you see any indication within five months
12  after Intrawest reported the Long Trail claim that
13  National Union had decided whether or not Long Trail was
14  enrolled in the OCIP?
15  MR. MOTZ:  Object to the form.
16  THE WITNESS:  I would have to go back and
17  look.  I know that during this period of time, it was
18  having difficulty making those determinations.
19  BY MS. FETTER:
20  Q  Should Intrawest have waited for National
21  Union to make that determination before it settled the
22  Long Trail lawsuit?
23  MR. MOTZ:  I am going to object to the form
24  of the question.
25  THE WITNESS:  I would have expected a

EDWARD MCKINNON, RPA  
NATIONAL UNION VS. INTRAWEST UCL

October 27, 2015  
193–196

Page 193
1  reasonable insured to have advised National Union what
2  it was doing in attempting to get National Union to
3  agree or disagree without prejudice to the ultimate
4  coverage determination in terms of the moment.
5  BY MS. FETTER:
6     Q   Did you see any evidence as to whether or not
7  that happened?
8     A   I didn't see it.
9         MR. MOTZ:  I'm sorry, whether or not what
10 happened?
11 BY MS. FETTER:
12    Q   Whether or not Intrawest advised National
13 Union.
14    A   Well, it was more than that.  Made an effort
15 to try to get an agreement to -- to proceed without
16 prejudice to the ultimate determination of coverage,
17 that would normally be the way one would expect that to
18 be handled.
19    Q   Okay.  And with that full explanation, did you
20 see any evidence that that happened?
21    A   I did not.
22    Q   Did you see any evidence that it did not
23 happen?
24        MR. MOTZ:  Hold on.  I got a question
25 unrelated to this.

Page 194
1         You can get the answer.
2         THE WITNESS:  I don't know how I would know
3  if there is evidence in the negative.
4         MR. MOTZ:  You shifted in position with your
5  back.  It looks like it might be stiffening up.  Do you
6  want to take a minute or two?
7         THE WITNESS:  No, let's just keep going.
8         MR. MOTZ:  Oh, okay.
9  BY MS. FETTER:
10    Q   Well, you didn't see any indication in the --
11 in the Activity Notes where one of the claim handlers
12 was -- was outraged and said, Intrawest didn't even try
13 to -- to work on this with us.  You didn't see anything
14 of that nature?
15        MR. MOTZ:  I am going to object to the form
16 of the question.
17        THE WITNESS:  I did not see such a note.
18 BY MS. FETTER:
19    Q   And you did not see any communication from
20 National Union to Intrawest complaining that Intrawest
21 didn't make such efforts?
22        MR. MOTZ:  I am going to object to the form
23 of the question.  It misstates the document.  Maybe if
24 you show him the claim notes.
25        THE WITNESS:  I think it was an accomplished

Page 195
1  fact at that point.  It had reached a settlement.
2  BY MS. FETTER:
3     Q   Did you see any communications from National
4  Union to Intrawest telling Intrawest that it was wrong
5  to have reached that settlement in the timing and manner
6  in which it did?
7         MR. MOTZ:  Object to the form of the
8  question.
9         THE WITNESS:  I understand that is one of the
10 issues in this litigation.  So presumably it is
11 communication in the form of litigation.  I didn't see
12 anything in the claim notes that I recall sitting here.
13 BY MS. FETTER:
14    Q   If Intrawest makes a payment in -- in excess
15 of $500,000 for a claim brought against it by a third
16 party, does that satisfy Intrawest's SIR?
17        MR. MOTZ:  Can I have that question read
18 back, please?
19        (Record read.)
20        MR. MOTZ:  Objection to the form of the
21 question.
22        THE WITNESS:  Not necessarily.
23 BY MS. FETTER:
24    Q   Could it?
25        MR. MOTZ:  Form.

Page 196
1         THE WITNESS:  It is possible, yes.
2  BY MS. FETTER:
3     Q   Is it -- is it likely that if Intrawest spent
4  7-and-a-half million dollars addressing claims brought
5  against it by the HOA, that at least 500,000 of those
6  were -- are likely to be things covered by the policy to
7  satisfy the SIR?
8         MR. MOTZ:  I am going to object to the form
9  of the question.  Incomplete hypothetical.
10        THE WITNESS:  I don't think you could
11 determine likelihood just from the numbers you are
12 giving me.
13 BY MS. FETTER:
14    Q   If -- if the amounts Intrawest paid either in
15 settlement or in repairs, if we assumed those amounts
16 were covered by the policy, they are for the kind of
17 occurrence that covered, it is the kind of damage that
18 is covered, would those payments satisfy Intrawest's
19 SIR?
20        MR. MOTZ:  I object to the extent that it
21 calls for --
22        THE WITNESS:  Well, I think it is --
23        MR. MOTZ:  -- a legal conclusion and
24 incomplete hypothetical.
25        THE WITNESS:  I think it is self-evident that



*800.211.DEPO (3376)*  
*EsquireSolutions.com*

Case No. 1:13-cv-00079-PAB-KMT    Document 589-2    filed 11/24/15    USDC Colorado
pg 8 of 8

EDWARD MCKINNON, RPA
NATIONAL UNION VS. INTRAWEST UCL

October 27, 2015
245–248

Page 245

1    MS. NOLTE:  Yes.
2    MR. MCCORMICK:  All right.  I will see you the
3  next time.  Michael Bresley is busy.
4    MR. MOTZ:  Have a good one.
5    MS. FEUER:  Bye everyone.
6    THE REPORTER:  Anne, do you want to order a
7  copy of the transcript?
8    MS. NOLTE:  Yes, please.  PDF, full size, and
9  PDF exhibits.  No paper, please.
10    MR. MOTZ:  We order expedite, two-day,
11  scanned exhibits.  We need PDFs, e-Trans, and ASCII
12  format.
13    MS. FETTER:  We also want them expedited.  We
14  need a full PDF, mini PDF, PTX, TXT, video
15  synchronization.
16    THE VIDEOGRAPHER:  With regular turnaround?
17    MS. FETTER:  -- MPEG and CMS file expedited.
18    MR. MOTZ:  Yeah, we need the videotape, but
19  we don't need it expedited.
20    Synced with the transcript, please.
21    THE VIDEOGRAPHER:  Okay.
22    MS. NOLTE:  With the video and MP4 format,
23  please.
24    (The deposition concluded at 5:17 p.m.)
25         * * *

Page 246

1         REPORTER'S CERTIFICATION
2
3    I, Diana Janniere, a Certified Shorthand Reporter,
4  in and for the State of California, do hereby certify:
5
6    That the foregoing witness was by me duly sworn;
7  That the deposition was then taken before me at the
8  time and place herein set forth; that the testimony
9  and proceedings were reported stenographically by me
10  and later transcribed into typewriting under my
11  direction; and that the foregoing is a true record of
12  the testimony and proceedings taken at that time.
13
14    IN WITNESS WHEREOF, I subscribed my name
15  this 29th day of October, 2015.
16
17
18
19       
20    _____
21       Diana Janniere, CSR No. 10034
22
23
24
25

Page 247

1         DECLARATION ERRATA SHEET
2
3
4  Our Assignment No. J0220772
5  Case Caption:  National Union
6  vs. Intrawest
7
8       DECLARATION UNDER PENALTY OF PERJURY
9       I declare under penalty of perjury that I have
10  read the foregoing transcript of my deposition taken in
11  the above-captioned matter or the same has been read to
12  me, and the same is true and accurate, save and except
13  for the changes and/or corrections, if any, as indicated
14  by me on the DEPOSITION ERRATA SHEET hereof, with the
15  understanding that I offer these changes as if still
16  under oath.
17       Signed on the _____ day of
18  _____, 2015.
19
20
21
22         _____
           EDWARD J. McKINNON, RPA
23
24
25

Page 248

1         DEPOSITION ERRATA SHEET
2  Page No._____Line No._____  Change to:_____
3  _____
4  Page No._____Line No._____  Change to:_____
5  _____
6  Page No._____Line No._____  Change to:_____
7  _____
8  Page No._____Line No._____  Change to:_____
9  _____
10  Page No._____Line No._____  Change to:_____
11  _____
12  Page No._____Line No._____  Change to:_____
13  _____
14  Page No._____Line No._____  Change to:_____
15  _____
16  Page No._____Line No._____  Change to:_____
17  _____
18  Page No._____Line No._____  Change to:_____
19  _____
20  Page No._____Line No._____  Change to:_____
21  _____
22  Page No._____Line No._____  Change to:_____
23  _____
24  SIGNATURE:_____DATE_____
25       EDWARD J. McKINNON, RPA