# EXHIBIT 3
# To Intrawest ULC's Motion to Exclude Certain Opinion Testimony of Edward J. McKinnon



August 30, 2015

Ms. Katherine D. Varholak
Sherman & Howard
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202

    **Re:    National Union Fire Insurance Company of Pittsburgh, PA, Plaintiff, v Intrawest ULC f/k/a/ Intrawest Corporation, Federal Insurance Company, National Fie Insurance Company of Hartford, and Continental Casualty Company, Defendants, Intrawest ULC f/k/a Intrawest Corporation, Third Party Plaintiffs v Willis North America et. al.,** In the United states District Court for the District of Colorado, No. 1:13-cv-00079-PAB-KMT

Dear Ms. Varholak:

    This office was retained by the law firm of Sherman & Howard on behalf of Intrawest Corporation as an expert consultant in this action to analyze the claims handling practices of the plaintiff National Union Fire Insurance Company.  It is my understanding that discovery is not complete and I reserve the right to change, amend or modify the opinions expressed herein based on any additional information that may be provided to me.

**I.**
**BACKGROUND AND QUALIFICATIONS**

1.    My current business address is 18017 Stanford Sonoma, California, 95476.

2.    A copy of my current resume is attached as Exhibit "A".

3.    My standard hourly rate is $250 and $400 for deposition testimony and trial testimony and that is the rate at which I will be compensated in this action.

4.    I graduated from the University of San Francisco Law School in 1976 where I was Editor-in- Chief of the Law Review and then went into private practice for four years.

5.    In 1980, I joined the General Counsel's Office at Fireman's Fund Insurance Company, where I performed both litigation and transactional work.

6.    In 1984, I joined the Claims Department where I was responsible for supervising the lawsuits against Fireman's Fund nationwide that alleged improper claims handling or insurance bad faith. Within this role, I would review hundreds of claims files from around the country to determine if Fireman's Fund claims handlers had properly investigated the claim and met or exceeded the industry

**NUFIC v Intrawest et. al.**
**August 30, 2015**

    merely delayed its investigation, leaving Intrawest to fend for itself and then when Intrawest settled the claims National Union raised the meritless defense of voluntary payment.

8) Based on my experience at Fireman's Fund and based on my experience of reviewing other National union claims files, it is my opinion that such unreasonable claims handling by National Union is a pattern and practice.

9) In addition, any argument by National that payments made by Intrawest to settle claims were voluntary payments and in violation of the insurance policy is contrary to the industry standard of how that provision is commonly interpreted.

10) There was no evidence in the files that National Union conducted a full fair thorough investigation to determine if the $5,000,000 completed operations aggregate applied to each project.

11) AIG unreasonably delayed and or denied paying benefits to Intrawest. Based on my review of the documents and deposition testimony it is my opinion that AIG unreasonably delayed and or denied paying benefits. As discussed in more detail below in some cases it took AIG years trying to locate the insurance policies and the underwriting files some of which they still have not located as of the writing of this report. As of the date of the writing of this report AIG has failed to explore other possible sources to obtain coverage information and also has failed to conduct an investigation into Intrawest's potential liability to third parties. It is clear from the files that as of January 2012   AIG's unreasonable conduct was continuing. See Coker deposition page 369.

12) AIG failed to conduct an adequate investigation into whether Intrawest had satisfied the SIR requirements. I saw no evidence in the files I reviewed that AIG investigated whether Intrawest met the SIR requirements and Mr. Coker confirmed he saw no evidence that AIG investigated this issue. (Coker deposition pages 199-200.)

*B. Specific Findings and Discussions*

1)      National Union unreasonably delayed its investigation of the Intrawest claims. It is basic insurance industry claims handling practice to immediately begin an investigation once a claim is tendered. It is unreasonable and unfair to the insured to delay the investigation. There are numerous examples in the documents I reviewed where National Union delayed the investigation often for months if not years. See for example Goos deposition page 86, 98, 112, 124,197.

2)      National Union failed to separate the liability file from the coverage file for Intrawest claims. It is basic insurance industry standard and practice that wherever there is a potential conflict between the carrier and the insured concerning coverage issues and the carrier may use information obtained while handling the liability issues there must be a separate file set up and separate adjusters for each file and information must not be shared to the detriment of the insured. Based on my review of the documents including the deposition of Lane Goos this was not done. See Goos deposition page 29-30.

3)      Based on a review of the claims files and the deposition testimony of Mr. Goos, it is clear that it sometimes took National Union years before it informed Intrawest whether

**NUFIC v Intrawest et. al.**
**August 30, 2015**

a particular claim was covered. See Goos deposition pages 86,112,114,131,138-139,148,173-174,176,199,203.

4) National Union failed to meet the industry standard when it failed to keep separate files for each insured. Mr. Goos admitted in his deposition page 33 that separate files were not maintained for different insureds under the wrap policies. Such a failure demonstrates the carrier's failure to acknowledge potential or actual conflicts between different insureds under these policies. See also page 97, 111,133.

5) National Union attempted to shift its duty to investigate onto the insured.

Based on my review of various documents, it is clear that the carrier attempted to shift its duty to investigate onto the insured mainly to the insured's employee Linda Huot. While the insured has a duty to cooperate under the policy, the carrier cannot attempt to avoid its obligations by relying solely on the insured for information. There is no indication in the file that the carrier ever attempted to contact other insured personnel, or defense counsel or other carriers or other parties in the litigation to obtain the information it was seeking. There is no indication in the file the carrier ever attempted to review any pleadings, interrogatory answers, damage expert reports or deposition transcripts.  Rather, it appeared that the carrier was using Ms. Huot's failure to return a few phone calls as a convenient excuse in an attempt to avoid its obligations.  Mr. Goos admitted in his deposition that he never prepared a written response to Ms. Huot's request for a list of items AIG needed to evaluate coverage. (page 148)

The carrier's actions are similar to an insurance carrier who has been notified that its insured has been in an automobile accident and relies on the insured to get copies of the police report, interview witnesses, take photographs of any damage to the cars involved, get medical reports if there were any injuries and perform all the other investigative tasks the carrier should perform.

6) The carrier failed to have proper policies and procedures in place so the claims adjuster could quickly retrieve the underwriting file and or the insurance policies. See Goos deposition  page 75 where after four months the adjuster Sarah Wharton still had not obtained the underwriting file in the Long Trail claim. See also pages 81,152-153,209. AS noted above the investigation of a third party claim involves investigating both coverage and liability. Concerning the investigation of coverage, AIG failed to perform the following  basic steps:
   a) talk to the insured Intrawest or request documents from Intrawest relating to coverage
   b) talk to other insureds under the particular OCIP program or request documents relating to possible coverage for Intrawest
   c) talk to the broker or request documents from the broker
   d) talk to internal underwriters about possible coverage for Intrawest
   e) talk to other departments in AIG such as loss control; premium accounting, reinsurance or request documents indicating information about the Intrawest policies.

Mr. Coker in his deposition claims that the reason for the lost files was due to the fact that he believed the files were turned over to AIG attorneys who were representing AIG in a

NUFIC v Intrawest et. al.
August 30, 2015

prior lawsuit with Intrawest (Coker deposition page 208-209) but neither he nor anybody else at AIG attempted to identify those lawyers to see if that was in fact true and if in fact the lawyers had the files. Such a failure to investigate is unreasonable.

In addition AIG failed to conduct any investigation into Intrawest's potential liability to third parties while they were supposedly looking for the insurance policies. Mr. Goos admitted in his deposition AIG had a duty to investigate the insured's potential liability. (page 52).There was nothing preventing AIG from beginning an investigation into Intrawest's potential liability to third parties subject to a full and complete reservation of rights or non-waiver agreement which protected both AIG and the insured.  Once this was in place AIG could have performed the following:

    a) A talk to defense counsel and request documents
    b) talk to other defendants and request documents
    c)  talk to plaintiff counsel
    d) conduct a site inspection
    e) retain damage experts
    f) retain liability experts
    g) talk to any experts for the plaintiff
    h) talk to other carriers. Mr. Goos apparently call the CNA adjuster for Engelbreth and left a message as did Ms. Wharton but they never followed up.

7)    The payments made by Intrawest to settle some of the claims were not "voluntary payments" as that term is used in the insurance industry.  Based on my experience over the past 35 years, the term "voluntary payments" is used to mean those instances where for example the insured settles a claims before notifying the carrier and then seeks reimbursement from the carrier. In the Intrawest claims, the carrier was properly notified, but unreasonably delayed in informing the insured whether there was coverage. In addition, there was no evidence in the documents that I reviewed that the carrier was prejudiced by the payments. Based on my review of the documents AIG either had information concerning the various claims or could have obtained the necessary information if they had conducted a full fair thorough investigation. Instead AIG "put their head in the sand" or in the words of Mr. Coker "put off the insured" (Coker deposition page 348) instead of investigating the various claims.  Mr. Coker also admitted he never looked at the documents Ms. Huot sent him on a CD. (Coker deposition page 355-356) There is  no evidence that AIG performed any of the following investigative actions  among others  in an attempt to honor its obligations under the policy:

    a) talk to plaintiff attorneys or request documents
    b) retain liability or damage experts
    c) to the broker or request documents
    d) talk to other defendants or their attorneys

Based on my review of the documents AIG had an opportunity to defend or investigate the insured's claim and receive the insured's cooperation but instead did nothing. There is no

**NUFIC v Intrawest et. al.**
**August 30, 2015**

    In conclusion, National Union failed to meet the industry standard for proper claims handling and acted unreasonably in a number of areas.

    Please feel free to call me if you have any questions.

                              Regards,

                              James P. Schratz